## SHUMWAY v. KITZMAN.

Under Civ. Code, § 1311, providing that no agreement for the sale of real property is valid, unless some note or agreement thereof be in writing, subscribed by the party to be charged, an oral agreement for the sale of land is not only unenforceable, but is wholly invalid.

Under Civ. Cide, § 1311, providing that no agreement for the sale of real property is valid, unless some note or memorandum thereof be in writing, subscribed by the party to be charged, or his agent, authorized in writing, no writing is admissible, for the purpose of evidencing the contract, unless it conforms to the statute.

Where plaintiff made an offer for real property, and defendant made a counteroffer, there was no contract.

Specific performance of a contract for the sale of land will not be enforced, where the terms of payment were not agreed upon.

While parol evidence is ordinarily admissible to explain ambiguities or uncertainties in a written instrument, it is not admissible to supply a material term of a contract, relating to real property, which, under the statute of frauds, must be in writing, and so is not admissible to prove the terms of payment agreed upon in a contract for the sale of land.

A vendor who has offered to sell his land may rescind the offer at any time before the purchaser has accepted.

Where vendor agreed to sell land at a certain price, the purchaser to have all the time he wanted to make certain deferred payments, and the vendor, at the time of closing the deal, proposed certain methods of handling the deferred payments, to which the purchaser objected, there was no definite contract which the purchaser could specifically enforce; Civ. Code, § 2340, providing that neither party to an obligation can be compelled specifically to perform, unless the other party is compellable specifically to perform.

(Opinion filed, January 31, 1912.)

Appeal from Circuit Court, Spink County. Hon. ALVA E. TAYLOR, Judge.

Action by George Shumway against Mike Kitzman. From a judgment for plaintiff, defendant appeals. Reversed and remanded, with directions.

E. W. Fiske and Callaghan & Granger, for appellant. Bruell & Morris, for respondent.

WHITING, J. This action was brought by the plaintiff and respondent to enforce specific performance of an alleged contract for the purchase and sale of certain lands in Spink county. In his original complaint, the plaintiff alleged an oral contract. This complaint having been demurred to, plaintiff asked and was granted leave to serve and file an amended complaint. In this amended complaint, he alleged a contract, without stating whether the same was oral or in writing. The plaintiff was required to make his complaint more specific, and did so by alleging a contract in writing, entered into on or about September 25, 1909. Defendant admitted the ownership of the premises, but denied the contract. The cause was tried to the court without a jury, findings and conclusions in favor of the plaintiff were made, a decree in conformity therewith entered, and it is from such decree or judgment that this appeal is taken. There being no question raised as to the sufficiency of the assignments of error, or as to the sufficiency of the specifications of the particulars wherein the evidence is claimed to be insufficient to support the findings of fact, the cause is presented to us upon its merits.

The evidence offered and received was solely that offered by plaintiff, and there is practically no conflict therein. A summary of such evidence and of the proceedings upon the trial is as follows:

Before offering any writing, purporting to evidence the contract sued upon, plaintiff, over proper objection as to its competency, testified in regard to a conversation had between himself and defendant in the fall of 1909, and prior to September 29th. He stated that defendant offered to sell him the land in question—there being 480 acres—at $35 per acre, and that after some conversation, wherein defendant insisted upon payment for 100 acres of plowing that had been done, defendant finally con-

sented to throw in such plowing without charge. There is no claim that this offer to throw in the plowing was in any manner evidenced by a writing; nor is it claimed that plaintiff at that time accepted the offer. Plaintiff testified he advised defendant that he would try and make arrangements, and thought that he would take the place. Plaintiff lived at Doland, S. D., and defendant at Rochester, Minn. On September 29th plaintiff sent a letter to defendant, in which he states, among other things: "I have made arrangements to get the money necessary to make the deal, and if you still think the same as you did Saturday night, I will buy your place. That would be at $35 per acre, and throw in the plowing." In answer to this, on October 2d, a letter was written by defendant's stenographer, signed by the stenographer in the name of defendant, and sent to plaintiff. The receipt in evidence of this letter was objected to, upon the ground that the same was not signed by the defendant, but, upon admission by defendant that the stenographer was directed to write the letter, and that defendant knew its contents, and that it was written, signed, and mailed with his knowledge, it was received in evidence, though there was no evidence to show that the letter was signed in the presence of defendant. This letter is, in part, as follows: "In reply to yours of September 29th, in regard to my farm, you can have the same at $35 per acre, payments same as we agreed, but can't throw in any plowing. I would want for the plowing whatever the price is per acre in that country. * * * In case of sale, please let me know by return mail, so I can send all papers necessary to the Doland State Bank for your inspection." In answer to this letter, plaintiff wrote defendant, upon October 5th, as follows: "I have received your letter of the 2nd and in reply will say that I think you ought to do as you agreed on plowing up to the time of agreement. I expected to pay for plowing since that date. I hope you can see it in that light. But if you won't do that I intend to close the deal anyway. So I will send you a check and would like to have you send on the papers to Doland State Bank." The check inclosed with this letter was for $100, and was cashed by defendant.

On October 6th, defendant and wife executed a deed, running to plaintiff as grantee, describing the land in question, reciting a consideration of $16,800, and reciting that the land was subject to two mortgages, one of $4,000, and one of $1,500, which mortgages grantee assumed and agreed to pay. This deed was sent by Callaghan & Granger, attorneys for defendant, to the Doland State Bank, in a letter, dated October 6, 1909, which letter was signed by the attorneys in their own name. Before offering this letter, and two of subsequent date, signed by such attorneys, evidence was received, over objection thereto, to show that said attorneys were orally authorized to write whatever they did write, and to send the papers they sent. It is undisputed that they had no written authority whatsoever. All the letters written by said attorneys were objected to, when offered in evidence, upon the ground "that it has not been shown that the authority of Callaghan & Granger was in writing, signed by the party sought to be charged, and for the further reason that they are incompetent, immaterial, and irrelevant and inadmissible under the pleadings and that the evidence at this time shows that their authority was verbal." The deed was objected to as incompetent, immaterial, and irrelevant, no part of the written contract alleged in plaintiff's complaint, and, because not having been delivered, it would not become a part of a written contract. The deed and letters were received in evidence. The plaintiff inspected the deed after it reached the bank. The letter of October 6, 1909, written by said attorneys to the bank, was as follows: "At the request of Mr. M. Kitzman, Jr., we hand you herewith warranty deed from Kitzman and wife to Geo. W. Shumway, which is to be delivered to Mr. Shumway upon the payment by him to you of thirty-nine hundred dollars, and exchange thereon and the delivery of a good and sufficient second mortgage on all of said premises executed by Shumway and wife to Michael Kitzman, Jr., for the sum of $7,300, payable as follows: $1,000 in one year; $1,000 in two years; $1,000 in three years; $2,000 in four years and $2,300 in five years, with interest, payable annaually, at the rate of six per cent. per annum on each of said sums. Should Shumway prefer said $7,300, may be divided into five equal payments and the notes

drawn accordingly instead of as above stated. Will you kindly record the mortgage and send notes and mortgage to Mr. Kitzman, with draft for the above amount. In addition to this Mr. Shumway is to pay for the plowing thereon the sum of $1.25 per acre." Upon October 7, 1909, plaintiff wrote defendant in part as follows: "You have your payments arranged differently than you and I talked of. You told me that if I paid you the $4,000.00 cash you would give me all the time I wanted to pay the balance in. Now I see you expect a payment each year, just a little in line with that deal on the plowing don't you think?" October 8, 1909, Callaghan & Granger wrote to the bank in part as follows: "Mr. Shumway seems to be kicking on the payments which we wrote were to be provided for in the mortgage, and if he does not wish the mortgage drawn, with payments as therein stated, you may give him such reasonable time as he may ask, not exceeding ten years, and have the notes and mortgage drawn accordingly." November 6, 1909, said attorneys telegraphed to bank as follows: "Do not deliver deed Kitzman to Shumway, but return at once to us. Letter follows." This telegram was received in evidence without objection. On the same day, said attorneys wrote the bank as follows: "Pursuant to our message of this morning you are instructed not to deliver to Geo. W. Shumway the deed from Michael Kitzman, Jr., and wife, to him under any circumstances. Mr. Shumway paid Mr. Kitzman $100, and we enclose you herewith draft for that amount, which is to be delivered to him when the deed is sent us. If you have not already done so, kindly return us the deed at once." The $100 referred to in said letter was delivered by the bank to plaintiff, and afterwards by plaintiff deposited in said bank to the credit of defendant. Upon receipt of the telegram, the bank notified plaintiff of its instructions. The plaintiff then procured $3,900 and deposited the same in the bank to defendant's order, and demanded that the deal be closed. The plaintiff never tendered or deposited any notes or mortgages. The bank retained the deed, neither delivering same to plaintiff nor returning it to defendant. There was some further testimony in relation to abstracts, conditions of

title, and other matters, but the foregoing covers all that is material herein.

The only questions, as we view the case, are: Was there ever a contract, valid under the statute of frauds? If so, what were the terms thereof? Did the plaintiff ever comply with such terms?

[1] Section 1311, Revised Civil Code, reads as follows: "No agreement for the sale of real property, or of an interest therein, is valid unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof." This court, in case of Jones v. Pettigrew, 25 S. D. 432, 127 N. W. 538, construing another section of the statute of frauds of this state, but similar in wording to section 1311, noting the wide distinction between the effect of a statute, such as the one before us, and those which, like the old English statute, simply make the contract unenforceable ,said: "Under one, the contract is valid, but not enforceable, without certain proof can be made; while, under the other, the contract itself never becomes valid until it is entered into in the manner prescribed by statute, or unless certain part performance prescribed by statute has taken place." Raub v. Smith, 61 Mich. 543, 28 N. W. 676, 1 Am. St. Rep. 619. Much of the apparent conflict found in the reported decisions comes from the different statutory provisions of the several states. In considering the case before us, it must be borne in mind at all times that it is not a question of a valid contract, unenforceable until reduced to writing, or until evidenced by a note or memorandum, properly signed, but it is a question whether or not there ever was a valid contract.

[2] We would also call attention to the fact that the apparent conflict in authorities upon the question of the admissibility of writings, signed by one who is the agent of a party to the contract, comes also from a difference in the wording of the statutes of the different states. Many of the states have the original English statute, or one similar, which merely provides that the

agent must be duly authorized; while our statute, like that of many other states, provides, as quoted above, that the party signing, if not the real party to the contract, must be by him lawfully authorized in writing. The uniform holdings of the courts are that, under the English statute, it is not necessary to show the authority to be in writing, but that, under statutes such as ours, no writing is admissible, for the purpose of evidencing the contract, unless such writing is signed by party to be charged, or the authority of party signing is shown to be in writing. Hickocx v. Bacon, 17 S. D. 563, 97 N. W. 847; Thomas v. Rogers, 108 Minn. 132, 121 N. W. 630, 133 Am. St. Rep. 421; Dal. v. Fischer, 20 S. D. 426, 107 N. W. 534. A full review of the authorities upon this question will be found in 7 Ann. Cas., commencing at page 1101.

[3] Let us consider this case as though every one of the above letters had been written, either by the plaintiff to the defendant, or by the defendant to the plaintiff, and had been by them properly signed; let us, moreover, consider that, instead of depositing the $3,900 with the bank, plaintiff had tendered to the defendant this sum in cash, and had tendered notes and mortgages complying fully with the terms stated in the letters, which we treat as written directly from plaintiff to defendant; but let us consider that such tender of money and papers came after defendant had declared the contract off, and that plaintiff never tendered any money in payment for the plowing that had been done. Under such facts could it be claimed that there was ever a valid contract between these parties, or, if there was a valid contract, that plaintiff had done all the law required of him, in order to entitle him to a deed?

Bearing in mind that there was no contract in existence at the time of the writing of the first letter, that at best there was merely an oral offer, not valid in law, and in no manner binding upon the defendant, and which could not have been made valid by an acceptance, either written or oral, we find plaintiff writing the letter of September 29th, which, in legal effect, was an offer to purchase this land at $35 per acre; the plowing to be thrown in.

Defendant refused this offer by his letter of October 2d, but himself made an offer that he would sell the land at $35 per acre; plaintiff to pay for the plowing. It is clear that no contract was consummated by those two letters. In his letter of October 5th, plaintiff complains of the charge for plowing, but says he intends to close the deal anyhow, and sends a check for $100. If there was a contract entered into between these two parties, binding upon both, it was created by this letter written by plaintiff, construing same as an acceptance of the terms stated in defendant's letter.

[4, 5] It is too well settled to need authorities in support thereof, that a court of equity will not enforce a contract indefinite or uncertain in its terms; also that courts will not make contracts for parties. Conceding that the deed could properly be considered as evidence of what property was the subject of the contract, yet none of defendant's letters in any manner purport to state what the oral agreement was, as to terms; and the oral agreement, as to terms, if there was one, could only become valid and binding upon defendant by his evidencing the same by a writing, properly signed. Plaintiff's own testimony as to the oral agreement shows that it was different from any proposition contained in defendant's letters. Could plaintiff's oral statements be received for the purpose of establishing the full contract? While there are many things that can be shown by oral testimony, for the purpose of clearing a writing of ambiguity or uncertainty, our attention has been called to no authority holding that the material terms of a contract coming under the statute of frauds can be so proven. The authorities are unanimous to the contrary. Swallow v. Strong, 83 Minn. 87, 85 N. W. 942; Webster v. Brown, 67 Mich. 328, 34 N. W. 676; Ringer v. Holtzclaw, 112 Mo. 519, 20 S. W. 800; Bruckman v. Dry Goods Co., 91 Mo. App. 454; Salmon Falls Mfg. Co. v. Goddard, 14 How. 446, 14 L. Ed. 493; Athee v. Bartholomew, 69 Wis. 51, 33 N. W. 110, 5 Am. St. Rep. 103; 2 Kent's Commentaries, 511. In Ringer v. Holtzclaw, supra, the court well said: "But, under the statute of frauds, if the subject-matter of the contract is within the statute, and the con-

tract or memorandum is deficient in one or more of those essentials required by the statute, parol evidence cannot be received to supply the defects; for this were to do the very thing prohibited by statute. * * * It is our province to uphold and enforce the statutes, not to nullify them. Nor have we any inclination to add another exception to the statute, since, as said by Jackson, C. J., in Smith v. Jones, 66 Ga. 338, 42 Am. Rep. 72, 'The floodgates are open wide as to the competency of witnesses, and the only breakwater left is to put this class of contracts, and others of similar character, in writing.'" But, even if we should hold that the terms of payment were not such an essential part of the contract that they need to have been reduced to writing, yet, even under the authorities cited by respondent (Langert v. Ross, 1 Wash. 250, 24 Pac. 443, and 2 Page on Contracts, § 704), oral testimony, in any case, would be admissible only when offered to prove terms sufficiently definite to render the contract enforceable. In 24 Pac., the court said: "This having been made to appear, the time of payment of said $1,500 becomes certain, as that is certain which may be made certain." Plaintiff's oral testimony, was to the effect that he was to have all the time he wanted for the deferred payments, and he did not claim that he had ever, either orally or in writing, advised the defendant as to what time he desired. If all this alleged conversation had been in writing, and a court was attempting to enforce the contract of these parties, what could it have provided, in its decree, as to the terms of the payments? Not a word, either oral or in writing, up to October 5th, as to the rate of interest or times of payment thereof; not a word that any notes were to be given; not a word to show defendant was to have a mortgage. It is therefore clear that all that had passed between these parties up to October 5th, even if evidenced by proper writings, did not constitute an enforceable contract; and this would still be true, if there had been evidence as to rate of interest, and that notes and mortgages were to be given, as even then the time for payment would be so uncertain as to render contract unenforceable.

[6, 7] It is clear, therefore, that up to October 5th there never was any contract, valid under the statute of frauds; neither

was there any contract that would have been enforceable, even were it not for the statute of frauds. It was not enough, then, for these parties thereafter to reduce to writing further evidence of a previous contract, but it became necessary for them to reach an agreement as to those terms left unsettled in their former dealings; and such agreement must not only be evidenced by proper writings, but it must be binding upon both parties—a mere offer by one party, with no acceptance by the other, could be of no binding force. The deed and the letters of October 6th and October 8th contained terms as to payments radically different from the claimed oral agreement. Were these proposed terms ever accepted? Defendant was in no manner bound to make plaintiff any offers, and, even if such offers had been evidenced by letters, properly signed, and sent direct to plaintiff, defendant had the absolute right to call the deal off at any time before plaintiff bound himself by accepting defendant's offers. Plaintiff could have accepted the offer made by defendant, evidenced by the deed and several letters, by accepting the deed (Halsell v. Renfrow, 202 U. S. 287, 26 Sup. Ct. 610, 50 L. Ed. 1032), or by otherwise communicating such acceptance to defendant before the recall of the deed. Plaintiff calls attention to the fact that, in his letter of October 7th, in addition to what we have hereinbefore quoted, he asked for the abstracts of title to be forwarded, and he claims that by so doing he accepted the terms contained in the deed and letter of October 6th. In view of the remainder of his letter, he never bound himself, so that defendant could have enforced such terms, if defendant were suing. Furthermore, as hereinafter noted, the court did not find that the terms contained in the letter of October 6th were accepted, but that those in the letter of October 8th were accepted, as evidenced by the fact that he finds that the plaintiff was to have 10 years within which to make the deferred payments. Suppose, instead of defendant's recalling the deed, he had brought an action to enforce the contract, what could the court have decreed in his favor? Section 2340, Rev Civ. Code, provides: "Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to

which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance."

All that we have said above is based upon the proposition that the evidence, oral and written, was properly received and considered. The trial court found that there was a written contract, and that under its terms plaintiff was to have not to exceed 10 years in which to make the deferred payments. As before noted, the evidence does not support such a finding. The trial court found that it was agreed that the papers were to be sent to the bank, and the deal was to be consummated there. Under the undisputed evidence, the papers were sent to the bank, as defendant's agent, and there never was a time, so far as any evidence shows, when defendant did not have full right to recall the papers and require the deal to be closed direct with him. The trial court absolutely disregards and makes no finding upon one material part of the contract, namely, the payment for the plowing. That plaintiff was to pay for the plowing was an express condition insisted upon by defendant, and had to be complied with by plaintiff before he could demand deed. Plaintiff's evidence as to any oral agreement concerning the plowing was improperly admitted, being incompetent for any purpose. Whether the undelivered deed and the letter written by the stenographer—or rather bookkeeper—were admissible in evidence would seem, under the authorities, very uncertain. Halsell v. Renfrow, supra, and notes in 50 L. Ed. 1033; notes, pp. 404-407 of 3 Ann. Cas.; Hickox v. Bacon, supra; Thomas v. Rogers, supra. We do not deem it best to pass upon this question at this time. It is, however, perfectly clear that the letters written by the attorneys were improperly received in evidence. There was no writing, signed by defendant, in any manner referring to such letters; in fact, no evidence, competent under the statute of frauds, showing that defendant ever became bound by the contents thereof.

It is clear that the judgment of the trial court was erroneous, and, further, that the plaintiff could not recover upon a new trial. The judgment of the trial court is reversed, and it is directed to enter a judgment, dismissing the complaint herein.