**Darla Patrick HICKS, Plaintiff
and Appellee,**

v.

**BROOKINGS MALL, INC., a corporation, Defendant and Appellant.**

**No. 14357.**

Supreme Court of South Dakota.

Considered on Briefs April 19, 1984.

Decided Aug. 15, 1984.

Robert G. Fite, Brookings, for plaintiff and appellee.

Ronald C. Aho, Brookings, for defendant and appellant.

HENDERSON, Justice.

This is an appeal from a declaratory judgment cancelling a written lease on space rented for a shoe store in the Brookings Mall located at Brookings, South Dakota. We affirm.

Appellant, Brookings Mall, Inc., operates a shopping mall. Appellee Hicks operates a shoe store within the Brookings Mall under an assigned lease agreement. The lease agreement was originally entered into between the Mall and Lee and Connie Colburn on October 10, 1977, which lease was a partially preprinted, standard form lease prepared by appellant.

Under the terms of the lease agreement, the lease period commenced on February 18, 1978, and was to continue for ten years following January 31, 1979, unless sooner terminated pursuant to the terms of the agreement. A critical clause of the lease stated as follows:

LANDLORD grants unto TENANT the right to cancel this Lease Agreement upon ninety (90) days' notice, at the end of the fourth full lease year, if TENANT's gross sales are not in excess of Seventy Thousand Dollars ($70,000) per year.

In October 1982, and pursuant to this provision, appellee notified appellant that she wished to cancel the lease agreement effective January 31, 1983.

A dispute arose between the parties as to whether the requirements for cancellation had been met. Appellee, therefore, instituted an action for declaratory judgment to determine her rights under the lease. Judgment was rendered by the trial court declaring appellee had the right to cancel the lease agreement as of January 31, 1983.

Two questions are posed by this appeal: (1) Did the trial court err in determining appellee had met the requirements for early cancellation of the lease agreement; and (2) did appellee at all times operate her business in good faith in order to maximize sales and make a profit? We shall treat these issues applying the law to the facts of this case.

I.

"With respect to declaratory orders, judgments, and decrees, appellant bears the burden of showing that the trial court's findings are clearly erroneous. SDCL 21–24–13; SDCL 15–6–52(a)." *Rapid City Area Sch. Dist. v. Black Hills*, 303 N.W.2d 811, 813 (S.D.1981).

The dispute rests on interpretation of the early cancellation clause in the lease agreement. Appellant insists there is an ambiguity triggering two possible interpretations. Appellant claims the clear import of the wording confines the time frame to the end of four full lease years and then allows cancellation only if gross sales for those four years do not exceed $70,000. Thus, only the years from February 1, 1979, through January 31, 1983, may be considered in determining the amount of gross sales. Any possible ambiguity hinges on determining whether gross sales must be less than $70,000 for each of the four years or only in the fourth year. Under either interpretation, appellant insists it should prevail because an average of the four full lease year's gross sales amounts to $70,-021.89 and the gross sales for the fourth year were $84,854.34.

The trial court determined that the logical intent of the phrase "if TENANT's gross sales are not in excess of Seventy Thousand Dollars ($70,000) per year" is that the overall average per year sales from the first day of occupancy until and through January 31, 1983, should be considered. Thus, the trial court computed gross sales for the full period in which the store operated, February 18, 1978, to January 31, 1983, with a proration for the 17 days in February 1978 in which the store was not open for business. The average gross sales for this full period amount to $69,735, sufficiently below the $70,000 figure to warrant cancellation.

■ Appellant claims it was error for the trial court to include the first year of the lease in computing gross sales because it was not a "full lease year" as defined in the agreement.

The term "lease year", as used herein, shall mean the period beginning with the commencement of the term of this lease as herein determined and ending with the next January 31, and each successive twelve month period thereafter during the term of this lease.

We disagree with appellant's contention. The clause is susceptible to several interpretations. In particular, it was susceptible to the construction adopted by the trial court. The trial court did not err in interpreting the lease agreement as setting forth two conditions for cancellation. The language may be read as stating: (1) that the lease may not be cancelled prior to the end of the fourth full lease year; (2) that gross sales must not be in excess of $70,-000 per year. The trial court's interpretation that all lease years, and not just full lease years, may be considered in averaging the gross sales for the lease term was not unreasonable.

■ "[W]here an ambiguous contract exists, it should be interpreted most strongly against one who drafted the contract and caused the uncertainty to exist." *City of Sioux Falls v. Henry Carlson Co.*, 258 N.W.2d 676, 679 (S.D.1977) (footnote omitted). Though it was the original lessees who requested the cancellation provision to protect them against being forced to keep an unprofitable business, it was the Brookings Mall management who composed the ambiguous clause and added it to the form lease. Where a contract is on a form supplied by one of the parties, such as the appellant herein, ambiguous language in it should be construed most strongly in favor of the other party, viz., the appellee in this case. "Construing the ambiguities in favor of [appellee] would compel the construction adopted by the trial court." *Jones v. American Oil Co.*, 87 S.D. 384, 389, 209 N.W.2d 1, 4 (1973). Therefore, we will not disturb the trial court's findings. *Chris-*tiansen v. Strand*, 81 S.D. 187, 132 N.W.2d 386 (1965).

## II.

Appellee's gross sales for the month of January 1983 were substantially lower than that of previous January's sales. Appellant contends this was due to a deliberate failure on appellee's part to act in good faith in promoting her business. It is argued that appellee deliberately kept sales down in order to prevail in her declaratory judgment action.

Appellant's contention is not supported in the record. The trial court found that appellee operated her business in good faith at all times. Appellee's testimony of bona fide business activity is contradicted only by the testimony of Esther Benning, Mall Manager. Benning testified that appellee's inventory was virtually nil in January 1983 and that no advertising or promotion was exercised by appellee. This was based on personal observance. Benning never entered the stock rooms or took an inventory count to determine if, indeed, inventory was deliberately reduced. Appellee testified she kept her store fully stocked at all times and that the reduction in sales was due to the time of year and a depressed economy.

■ We are not at liberty to change findings where the trial court has resolved conflicts in the evidence. *Mulder v. Tague*, 85 S.D. 544, 186 N.W.2d 884 (1971). There is no evidence to substantiate, by a preponderance, that appellee deliberately sabotaged her business for the month of January 1983. *Young v. Huffman*, 77 S.D. 254, 90 N.W.2d 401 (1958).

Affirmed.

All the Justices concur.