Paul A. BRAUNGER, Plaintiff
and Appellant,

v.

Jack SNOW and June Snow,
Defendants and Appellees.

Nos. 15339, 15341.

Supreme Court of South Dakota.

Argued Jan. 14, 1987.
Decided May 13, 1987.

Rory M. Barth, Sioux Falls, for plaintiff and appellant.

Roger W. Ellyson of Ellyson Law Offices, Watertown, for defendants and appellees.

MILLER, Justice.

This is a contract action. The primary issues center around the applicability and effect of the statute of frauds. Present also are issues dealing with collateral oral agreements and the admissibility of a pre-trial deposition of a party. Specifically, Paul A. Braunger (Braunger) appeals the trial court's denial of his motion for summary judgment. He also challenges various trial court findings of fact, and a ruling denying his request to admit a deposition of defendant, Jack Snow (Snow), in its entirety. By notice of review, Snow appeals certain trial court findings. We affirm.

Braunger is president of Braunger Institutional Foods, Inc. (the company)[*] which has its home office in Sioux City, Iowa. This business sells foodstuffs to restaurants and institutional purchasers such as hospitals and schools. Snow owned a warehouse in Watertown, South Dakota. Braunger was looking to expand the company. Snow's son, Jon, who worked as the company's controller, informed Braunger of the availability of his father's warehouse. In December of 1982, Snow orally agreed to lease his warehouse to the company for twelve months at $3,000 per month. The lease period started March 1, 1983, and ended February 28, 1984.

In December, 1982, the company began to prepare the building for business. An investment approximating $300,000 was made in trucks, equipment, and inventory. Braunger hired a few workers, including Snow, who took the position of sales manager.

---

[*] Throughout the trial it seemed that Braunger and the company were one entity. It was never clear when Braunger was acting for himself or the corporation. In fact, Braunger brought this suit in his own name—the company is not a party to this action. Since "corporate veil" issues were not presented to us we do not concern ourselves with them here.

In February 1983, Snow called Braunger and informed him that the savings and loan company holding the mortgage on the warehouse was threatening to foreclose because Snow was nine monthly mortgage payments delinquent. Snow had failed to inform Braunger of any delinquency until this phone call. Braunger subsequently learned Snow had been delinquent in payments during the negotiation period leading to the lease of the warehouse. Although the Watertown plant was not yet operating, Braunger feared its foreclosure would jeopardize the large financial commitment already made in the expansion. He sent Snow a $30,000 check dated February 11, 1983, drawn on the company's account to cover the default. This $30,000 transaction is at the heart of the parties' dispute in this case.

Shortly after sending the check Braunger, together with Jon Snow, went to a Sioux City attorney to have a document drafted evidencing the transactions between Snow and Braunger. This attorney produced a document entitled "Lease and Option to Purchase Business Property." This lease/option set forth many terms regarding the lease of the property and gave Braunger an option to purchase the building ending March 1, 1984. On February 15, 1983, Jon Snow obtained the lease/option from the attorney's office and gave it to Braunger who drove to Watertown, accompanied by Jon Snow, where the document was presented to Snow. Braunger claims he did not have an opportunity to read the instrument prior to giving it to Snow. Snow signed the lease/option that day after consulting with his attorney. Braunger stated that he was in a hurry and wished to discuss the document with his attorney before signing. He then returned with the document to Sioux City and has never signed the writing. He claims that he refused to sign the document because of the option clause and further that he so advised Snow on various occasions.

The Watertown warehouse opened in March 1983 and the business quickly floundered. In September 1983, Braunger informed Snow that he would not be renewing the lease. In July 1984, after the company had moved out of the plant, Braunger commenced this suit against Snow, requesting repayment of the $30,000.

The parties' characterizations of their transaction are in sharp dispute. Braunger's version is as follows: In exchange for the $30,000, Snow (1) gave Braunger an option to purchase the warehouse ending March 1, 1984, (2) agreed to apply the funds to the arrearages on the mortgage, and (3) agreed that if the option was not exercised Snow would repay the $30,000, interest-free, selling the building to a third party if necessary to raise the money. Snow characterizes the agreement more as a typical purchase of an option, claiming that in exchange for the $30,000 he (1) agreed to apply the money to the mortgage arrearages, and (2) sold Braunger an option to purchase the warehouse which expired March 1, 1984.

Braunger moved for summary judgment on his complaint. He argued that even if the agreement were given Snow's characterization, it was unenforceable under the statute of frauds, and he was entitled to restitution of the $30,000 as a matter of law. The trial court denied this motion.

The case went to trial without a jury. The trial court issued a memorandum decision stating it believed the parties intended that Snow would repay the $30,000 in the event Braunger declined to exercise his option to purchase. After reviewing Snow's objection to Braunger's proposed findings of fact and conclusions of law, the court reconsidered its decision, and in a second memorandum opinion decided that its earlier holding was incorrect. The court then prepared its own findings of fact and conclusions of law and judgment in favor of Snow on the issues raised by Braunger's complaint and for Braunger on Snow's counterclaim.

## ISSUE I

■ We first address Braunger's claim that the circuit court erroneously adopted Snow's version of the transaction. It is well-established that this court will not overturn a trial court's finding of fact un-

less we determine it to be clearly errone-ous. *E.g.*, SDCL 15-6-52(a); *Matter of Estate of Linnell*, 388 N.W.2d 881 (S.D. 1986); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). A finding of fact is clearly erroneous only when this court is left with a definite and firm convic-tion that a mistake has been made. *Lin-nell, Hobelsberger, supra.* Upon all factu-al reviews, the question is not whether this court would have made the same findings as the trial court. *Linnell, Hobelsberger, supra.*

From a review of all of the evidence, taken together, we believe that Snow made a sufficient showing to prevent this court from holding that the trial court's findings are clearly erroneous. For example, the written contract, drafted by Braunger's counsel, specifically provides that the $30,-000 was to be paid in exchange for an option to purchase the warehouse and does not provide for return of the $30,000 in the event Braunger failed to exercise the op-tion. Although Braunger did not sign the agreement, it is the only written evidence of the parties' alleged intent and is at least some evidence of the nature of the parties' transaction.

We are cognizant that a writing which fails to comply with the statute of frauds is not admissible into evidence for the purpose of enforcing the contract. Re-statement (Second) of Contracts § 143 (1979). *See also Shumway v. Kitzman*, 28 S.D. 577, 134 N.W. 325 (1912). We are also aware that testimony is inadmissible for the purpose of proving the terms of a con-tract for the sale of an interest in real estate. *Habeck v. Sampson*, 88 S.D. 437, 221 N.W.2d 483 (1974) (citing *Boekelheide v. Snyder*, 71 S.D. 470, 26 N.W.2d 74 (1947); *Shumway, supra; Phelan v. Neary*, 22 S.D. 265, 117 N.W. 142 (1908). We note that the only objection to the admission of testimony regarding the terms of the agreement was through a pretrial motion in limine to prevent admis-sion of the writing. The trial court denied that motion and Braunger did not appeal that holding.

Braunger would have us conclude the terms of the writing did not reflect the parties' agreement. He points to testimo-ny that Jon Snow was responsible for the failure of the document to provide that the $30,000 would be returned if Braunger de-clined to exercise the option. Braunger claimed he relied upon Jon Snow to provide the Sioux City attorney with the informa-tion necessary for drafting the agreement because the son handled the company's tax matters. According to Braunger, Jon visit-ed the attorney alone after the initial visit at which Braunger was present, and at this second meeting instructed the attorney to draft the document in the form in which it later appeared. There was ample evidence to the contrary, however. For example, Jon Snow testified that he had no contact with the attorney other than the initial meeting at which Braunger was present. He also testified that Braunger provided the information and directions upon which the attorney relied in drafting the agree-ment, and that the agreement was drafted as the parties intended. This issue certain-ly could have been clarified had Braunger called the attorney to testify regarding the actual occurrences.

Braunger also makes the argument that if the trial court did not find that the parties' option contract was on the terms as related by Braunger, it should have, in the alternative, found there was no con-tract formed at all, for the lack of a "meet-ing of the minds." This argument is based on SDCL 53-3-3. Under this statute, there is no mutual consent to contract "unless the parties all agree upon the same thing in the same sense." Braunger argues that because he contracted under the assump-tion that Snow was agreeing to the return of the $30,000 in the event Braunger failed to exercise the option, there was no mutual-ity of consent within the meaning of SDCL 53-3-3. This issue is rendered moot by our prior holding that the trial court was not clearly erroneous in finding that Braunger contracted under the assumption the $30,-000 would be forfeited if he failed to exer-cise the option.

## ISSUE II

We next address Braunger's argument that the trial court should have granted his motion for summary judgment based upon the statute of frauds. (For the purposes of this motion Braunger concedes, arguendo, that Snow's factual version of the transaction is correct and that there is no genuine issue of material fact, thereby leaving us to deal solely with the issue as a matter of law. *See Wilson v. Great Northern Ry. Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968).)

■ At the time Snow and Braunger made their agreement, SDCL 53–8–2 in pertinent part read as follows:

The following contracts shall not be enforceable by action unless the same or some memorandum thereof be in writing and subscribed by the party to be charged or his agent, thereunto authorized in writing:

. . . . .

(3) An agreement for the sale of real estate or an interest therein....

In South Dakota, options to purchase real estate are considered interests in land for purposes of the statute of frauds. *Habeck, supra; Skjoldal v. Myren,* 86 S.D. 111, 191 N.W.2d 809 (1971).

■ The trial court denied Braunger's motion for summary judgment for two reasons. First, the court reasoned Snow was not attempting to enforce an option agreement, but was only asking for "a determination ... whether the $30,000 ... was to be payment for an option to buy real estate or for a loan to be repaid." We disagree. Snow was attempting to enforce the terms of the option contract, as this contract was the only ground upon which he claimed a right to retain the money.

■ The court also reasoned that Braunger did not have standing to assert the statute in this case. For this conclusion, the court relied on 73 Am.Jur.2d *Statute of Frauds* § 576 (1974), which states: "A plaintiff cannot invoke the statute of frauds for a defendant." We also disagree with the trial court's reasoning on this point. The statute of frauds is available as a defense to "the party to be charged"

under the contract. SDCL 53–8–2. In this case Snow was attempting to require Braunger to honor the terms of the written agreement. Braunger was therefore the "party to be charged" under the contract. Braunger attempted to use the statute in response to Snow's assertion of the writing. In other words, Braunger was invoking the statute on behalf of *himself,* not on behalf of Snow. *Compare* cases cited in 73 Am.Jur.2d *Statute of Frauds* § 576 n. 74 (1974).

■ Because Braunger never signed the writing, the document failed to comply with the statute. Braunger therefore had a viable defense to Snow's action to enforce the contract. This does not end our analysis however. In this case Braunger does not merely use the statute as a defense to Snow's enforcement of the writing, he asserts the right to the *return* of the $30,000 paid for the option. Therefore we now must consider whether a nonsigning party to a contract which falls within the statute of frauds has the right to return of the consideration furnished by him under the contract, where the other party to the contract stood willing and able to perform.

Braunger cites *Reedy v. Ebsen,* 60 S.D. 1, 242 N.W. 592 (1932), *aff'd on rehearing,* 61 S.D. 54, 245 N.W. 908 (1932), in support of his claim for return of the money. This court held in *Reedy* that a purchaser may recover money paid under an oral contract for the sale of land, even though the seller stood "ready, willing, and able on payment of the balance of the purchase money to convey title." 60 S.D. at 2, 242 N.W. at 592. This holding was premised upon a literal interpretation of the wording of our statute of frauds as it existed at that time. The statute as contained in Rev. Code 1919, § 856 read:

No agreement ... for the sale of real property, or an interest therein, is *valid* unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or his agent thereunto authorized in writing[.] (Emphasis added.)

Because the statute declared that contracts failing to comply with the statute were not valid, under precedent existing before *Reedy,* such contracts were "not merely voidable, but ... void." *Reedy,* 60 S.D. at 3, 242 N.W. at 593. We held in *Reedy* therefore that "the parol agreement, being in all respects a nullity, did not constitute a consideration for the partial payment[.]" 60 S.D. at 7, 242 N.W. at 594. The purchaser was therefore entitled to return of the money furnished under the contract.

We made it clear in *Reedy* that if the statute had rendered such contracts merely unenforceable, as opposed to invalid, the plaintiff would have no right to return of the money. This language spoken of theoretically in *Reedy* is now the statutory law in this state. After *Reedy,* our statute of frauds was amended to provide that contracts failing to comply with the statute's requirements are merely unenforceable. *See* SDCL 53-8-2 quoted *supra.* We therefore now hold that Braunger has no right to return of the money he furnished under the contract. As Judge Roberts stated for the court in *Reedy:*

'... The reason given for not allowing the purchaser ... to repudiate the agreement and recover back what he has paid, so long as the seller is in no default, is very obvious.... There is ... a valid ... contract between the parties, and though the remedy [is] suspended, it ... constitutes a sufficient consideration for the payment of the money. There being thus a good consideration ... it is no injustice to say to [the purchaser] that he shall not ignore [the contract], at least until [the seller is in breach.]'

60 S.D. at 6, 242 N.W. at 594 (quoting *Brandeis v. Neustadtl,* 13 Wis. 142 (1860)). *See also,* 2 A. Corbin, Contracts, § 332 (1950).

We stress that we are not overruling the 55-year-old precedent set forth in *Reedy.* To the contrary, we are adhering to the rules laid down in that case and reaffirmed on rehearing. It is the amended wording of the statute which has brought about our current holding, not this court's abandonment of the long-standing *Reedy* rationale.

In light of our holding on this issue we need not consider whether the option contract was taken out of the statute of frauds for being fully performed, or for other reasons. *See Geiger v. McMahon,* 31 S.D. 95, 139 N.W. 958 (1913); *Miller v. Kennedy,* 12 S.D. 478, 81 N.W. 906 (1900); Restatement (Second) of Contracts § 145 (1979).

## ISSUE III

Braunger next argues the circuit court erred in denying his request to introduce a pretrial deposition of Snow in its entirety. The trial court ruled that SDCL 15-6-32(a) did not contemplate introduction of the entire deposition. Throughout cross-examination of Snow, Braunger's attorney was allowed impeachment through utilization of specific testimony in Snow's deposition. Braunger nevertheless argues he was harmed because some portions of the Snow deposition were not admitted which supposedly were helpful to his case.

SDCL 15-6-32(a) provides:

At ... trial ... any part or all of a deposition so far as admissible under the rules of evidence, may be used against any party who was present ... at the taking of the deposition ... in accordance with any of the following provisions:

....

(2) The deposition of a party ... may be used by an adverse party for any purpose.

Braunger correctly argues that this statute allows admission of deposition testimony of an adverse party for any purpose, regardless of the deponent's presence at trial. *E.g., Coughlin v. Capital Cement Co.,* 571 F.2d 290 (5th Cir.1978); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2145 (1970); 4A J. Moore & J. Lucas, Moores Federal Practice ¶ 32.04 (1984 2d ed.). This, however, does not require that the entire deposition of an adverse party be admitted in all cases. "[T]here are limitations which afford a trial court reasonable latitude for expedition of the trial. Useless encumbrance of the record cannot be insisted upon in any case, [and] [r]epetitious or

immaterial matter may be excluded[.]" *Fey v. Walston & Co., Inc.*, 493 F.2d 1036, 1046 (7th Cir.1974) (citations omitted). *See also Gauthier v. Crosby Marine Service, Inc.*, 752 F.2d 1085 (5th Cir.1985); *King & King Enterprises v. Champlin Petroleum Co.*, 657 F.2d 1147 (10th Cir.1981); *Coughlin, supra*. We further note this procedural rule provides that our rules of evidence must also be satisfied prior to the introduction of deposition testimony. Irrelevant evidence is not admissible under these latter rules. SDCL 19–12–2. Also, the trial court is given discretion in the handling of depositions. *King, supra*. Because the trial court properly allowed Braunger to attempt to impeach Snow through specific parts of Snow's deposition, there was no abuse of discretion. The court's ruling was simply in keeping with sound trial practice. "As a general rule the better practice is for a party not to offer an entire deposition that he desires to be considered in evidence." 8 C. Wright & A. Miller, Federal Practice & Procedure, § 2148 (1970).

## COUNTERCLAIM AND NOTICE OF REVIEW ISSUES

Snow presented two counterclaims in response to Braunger's complaint. The trial court denied both and Snow appeals by notice of review. The following additional facts are necessary for an understanding of these issues.

In preparation for closing the Watertown plant, in early 1984, the company was shipping the Watertown warehouse inventory to Sioux City. The Sioux City warehouse was not large enough to store all items, however. This required Braunger to occupy the Watertown plant beyond the February 28, 1984, expiration of the lease. The company's property was not entirely removed from the Watertown warehouse until sometime in May or June, 1984. Braunger sent Snow a $3,000 rent check to cover the March occupancy of the warehouse. No further rent was paid. Snow sold the warehouse to a third party in July or August of 1984.

Snow's counterclaim requested damages for the company's post-March holdover. Apparently the only property the company left in the warehouse during these latter two months was some refrigeration equipment. Snow's appeal of the trial court's denial of this claim is premised almost exclusively on a letter dated April 12, 1984, which Snow sent Braunger, requesting payment for the April occupation.

In October, 1983, Oberlander Heating and Plumbing converted the warehouse heating system from oil burning to natural gas burning. When both parties refused to pay for these services, Oberlander filed a mechanic's lien against the warehouse in the amount of $5,510.86. (Oberlander apparently was not yet paid when the parties argued their appeal.) Snow's counterclaim alleged that Braunger authorized the changeover, that the mechanic's lien hindered his ability to sell the property, and that the lien damaged the financial reputations of he and his wife. Snow requested $50,000 in damages.

## ISSUE IV

■ Snow argues the trial court was clearly erroneous in finding he gave permission for the company to occupy the warehouse rent-free during the post-March occupancy. Again, we are not left with a firm and definite conviction that the trial court's finding on this matter was incorrect. Two employees of the company testified that in approximately the end of March, 1984, Snow requested that Braunger leave the refrigeration equipment in the warehouse in order to make the warehouse more marketable. Apparently, Snow was attempting to sell the warehouse to slaughterhouse operators who may have been more interested in purchasing the building if the refrigeration equipment was included in the sale. Braunger also wished to sell the equipment.

It is true that Snow's attorney sent Braunger a letter dated April 12, 1984, in which it was claimed Snow expected rent to be paid for all months of occupancy. However, Braunger quickly replied to this message by his own letter informing the attorney that Snow had given the company permission to occupy the warehouse rent free.

Snow's attorney on this appeal points us to no evidence of an effort by Snow to bring action against the company for their presence in the warehouse after March. It therefore may be rationally concluded that Snow decided to abide by his earlier promise to not charge the company for leaving the equipment. We note that the building was not sold until after the equipment was removed and Snow thus had motive to retain the equipment at the site after the April 12 letter.

### ISSUE V

 Finally, Snow argues the trial court was clearly erroneous in finding Snow authorized the heating system changeover. This issue is primarily one of weighing conflicting testimony. Again, the clearly erroneous rule applies. As we have held before, this court is not at liberty to overturn a trial court finding which required the resolution of sharply conflicting evidence. *Gross v. Conn. Mut. Life Ins. Co.*, 361 N.W.2d 259 (S.D.1985); *Hicks v. Brookings Mall, Inc.*, 353 N.W.2d 54 (S.D. 1984); *Mulder v. Tague*, 85 S.D. 544, 186 N.W.2d 884 (1971). The trial court's firsthand opportunity to observe the demeanor of witnesses while testifying also plays a role here. Finally, we are mindful that the number of witnesses testifying for a particular point does not mandate a finding in accordance. Applying the above standards to our review of this issue we once again cannot say the trial court was clearly erroneous in concluding that Snow authorized the conversion of the warehouse heating system.

Affirmed.

WUEST, C.J., and MORGAN and HENDERSON, JJ., concur.

SABERS, J., concurs in part and concurs in result in part.

SABERS, Justice (concurring in part & concurring in result in part).

I concur in all issues except issue II, where I concur in the result only. The reasoning of the majority opinion in issue II is flawed. I would simply hold that even though the statute of frauds applies in the first instance, partial (or even full) performance of the verbal agreement removes the necessity for a signed writing. In other words, Braunger paid the money on an option to buy, which money would have applied against the balance of the purchase price, if he had elected to buy. Although Braunger did not elect to buy, he did list the property in a Minneapolis advertisement in an attempt to sell it. These facts and the unsigned writing support the proposition that Braunger and Snow partially (or even fully) performed the agreement, which performance removes the necessity for a signed writing. *See: Berg v. Carlstrom*, 347 N.W.2d 809, 812 (Minn.1984) (An oral agreement may be taken out of the statute of frauds by part performance); *Matter of Estate of Gosmire*, 331 N.W.2d 562 (S.D.1983); *Cooke v. Blood Systems, Inc.*, 320 N.W.2d 124, 127 (N.D.1982) (An agreement for the leasing of property for more than one year is invalid unless there is a written note or memorandum evidencing the agreement, but part performance of an oral contract may bar the assertion of the statute of frauds if, in fact, there is an oral agreement.) Essentially, this was a question of credibility and proof, previously determined against Braunger under issue I.