Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
COFFEE CUP FUEL STOPS & CONVENIENCE STORES, INC.,
a corporation,
Plaintiff and Appellant,
v.
DIANE L. DONNELLY and GEORGE DONNELLY,
Trustees of the Diane L. Donnelly Living Trust,
and Diane Donnelly, individually,
Defendants and Appellees.
South Dakota Supreme Court
Appeal from the First Judicial Circuit, Union County, SD
Hon. Richard Bogue, Judge
#20611--Reversed
Carlyle Richards, Richards & Oliver, Aberdeen, SD
Attorneys for Plaintiff and Appellant.
Gary J. Pashby, Lisa Hansen Marso
Boyce, Murphy, McDowell & Greenfield, Sioux Falls, SD
Attorneys for Defendants and Appellees.
Considered on Briefs Feb 24, 1999; Opinion Filed Apr 14, 1999
MILLER, Chief Justice.
[Â¶1] Coffee Cup Fuel Stops and Convenience Stores, Inc. brought an action against Diane and George Donnelly seeking specific performance of an option contract to purchase real property. The trial court granted summary judgment to Donnellys. We reverse and remand.
FACTS 
[Â¶2] Coffee Cup, a closely held South Dakota corporation, is engaged in the convenience store and petroleum business in South Dakota, North Dakota, and Wyoming. One of its South Dakota businesses is located in Union County, near Vermillion, at the southwest corner of the junction of Interstate 29 and South Dakota Highway 50.
[Â¶3] In 1994, Coffee Cup became interested in purchasing land adjacent to its Union County facility. It contacted the South Dakota Department of Transportation (DOT), which owned a fourteen-acre parcel of property east of the facility. DOT was not interested in selling the property outright, but indicated it would consider an exchange for similar property.
[Â¶4] Tom Heinz, one of Coffee Cup's shareholders and directors, began searching for available property to purchase and then exchange with DOT. During his search, Heinz approached George Donnelly to inquire if Donnellys were interested in selling a fourteen-acre parcel of property. Donnelly and his wife Diane owned approximately 1,200 acres of farmland in Union and Clay Counties. Donnelly offered to sell a fourteen-acre parcel located north of Highway 50 for $3,500 per acre.(fn1) 
[Â¶5] On June 10, 1994, Donnelly and Heinz visited an attorney, explained the nature of the land transaction to him, and had him prepare an agreement. Both parties signed the option contract and Heinz paid Donnellys $1,000 as consideration. The agreement provided that Coffee Cup had a 90-day option to purchase the property described as:


Approximately fourteen (14) acres located in the extreme South end of the Southeast Quarter of the Northwest Quarter (SEÂ¼NWÂ¼) of Section Eight (8), Township Ninety-two (92) North, Range Fifty (50), West of the 5th P.M., Union County, South Dakota[.]
The agreement further provided that the exact dimensions of the property would be determined by survey.
[Â¶6] On August 8, 1994, the parties agreed to extend the option until January 1, 1995. Heinz paid an additional $20 as consideration for the extension.
[Â¶7] On December 21, 1994, the parties executed a second option contract. The terms of the second contract included a 180-day option period, an increase in the sale price by $100 per acre, and an additional $1,000 as consideration. The property description remained unchanged.
[Â¶8] In May 1995, Heinz informed Donnellys that the property description was incorrect, listing the section as eight instead of eighteen. The parties corrected the error, initialed the change, and agreed to extend the option period of the second contract for an additional thirty days.
[Â¶9] Also, during May 1995, Heinz and Donnelly physically explored the property to determine the proper configuration of the tract of land to be sold. Heinz suggested that the property's boundary run in a straight line east and west of the north boundary of Lot N, a property owned by Coffee Cup. This suggestion was taken to an official at the ASCS office, who determined that this configuration included only 12.4 acres, not fourteen as the parties desired. Heinz claims that Donnelly then suggested the parcel could become fourteen acres by moving the north boundary seventy-five feet north.
[Â¶10] By letter dated July 15, 1995, Heinz informed Diane that Coffee Cup was exercising its option to purchase the property as described in the December 21, 1994 agreement, with the exact dimensions to be determined by survey. In response, on July 24, Donnelly directed surveyor Jerry Flannery to survey the property he intended to sell to Coffee Cup. There is evidence that he instructed Flannery as to exactly what parcel he anticipated selling to Heinz. Flannery followed Donnelly's directions and produced a survey plat, labeling the tract to be conveyed as "Lot P."(fn2) 
[Â¶11] Coffee Cup claims it was ready to close the transaction in July 1995, but Donnellys delayed the completion of the sale. In November 1995, when Heinz asked Donnelly when the transaction could be closed, Donnelly informed him that he was unsure if he was still interested in the agreement and that Heinz should contact him after January 1, 1996.
[Â¶12] Also in November, Heinz obtained a copy of the survey diagram from Flannery. Heinz delivered the diagram to Donnellys and requested that they contact the Union County Abstract and Title Company regarding title insurance on Lot "P." He also indicated Coffee Cup would like a warranty deed on the property by January 15, 1996.
[Â¶13] On October 8, 1996, Coffee Cup informed Diane that it was proceeding with the platting and would contact her when it was completed so that she could provide her signature. Diane responded, by letter on November 4, 1996, stating that Coffee Cup had no enforceable rights under the agreement and that she had no legal responsibility to it.
[Â¶14] In response, Coffee Cup demanded that Diane tender a warranty deed within ten days. It informed her that if the deed was not tendered an action for specific performance would be commenced. The demand letter, which was dated December 13, 1996, included the property description as stated in the option contract and, for the first time, a metes and bounds description.
[Â¶15] In January 1997, Coffee Cup brought an action seeking specific performance of the option contract. Donnellys moved for summary judgment. The trial court granted their motion, finding that the option contract was unenforceable because it did not contain the essential elements of a contract. Coffee Cup appeals.
ISSUE 
[Â¶16] Did the trial court err in concluding that the parties' option contract was unenforceable because there was no meeting of the parties' minds as to precisely what property was being bought and sold?
STANDARD OF REVIEW 
[Â¶17] Our review of a trial court's order granting summary judgment is well settled.


In reviewing a grant or a denial of summary judgment under SDCL 15-5-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material facts exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.
Walther v. KPKA Meadowlands Ltd. Partnership, 1998 SD 78, Â¶14, 581 NW2d 527, 531 (citing Specialty Mills, Inc. v. Citizens State Bank, 1997 SD 7, Â¶7, 558 NW2d 617, 620 (citation omitted)).
DECISION 
[Â¶18] The trial court erred in granting summary judgment to Donnellys.
[Â¶19] SDCL 53-1-2 sets forth the elements of a contract. It provides as follows:


Elements essential to existence of a contract are:

(1) Parties capable of contracting;
(2) Their consent;
(3) A lawful object; and
(4) Sufficient cause or consideration.
[Â¶20] The trial court found that the option contract entered into by Coffee Cup and Donnellys lacked one of the essential elements of a contract, the consent element. It determined that, because the description of the property to be conveyed was inadequate, the contract was not enforceable by specific performance.
[Â¶21] Coffee Cup, however, claims the trial court erred in its determinations. It argues that the parties mutually agreed as to which parcel of land was to be conveyed; therefore, it should have been permitted to present evidence to support its meeting of the minds claim. We agree.
[Â¶22] An enforceable contract requires mutuality of consent. See SDCL 53-1-2(2); Braunger v. Snow, 405 NW2d 643, 646 (SD 1987). "There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract." 17A AmJur2d Contracts Â§26 (1991); see Miller v. Tjexhus, 20 SD 12, 16, 104 NW 519, 520 (1905). Mutual consent to a contract does not exist "unless the parties all agree upon the same things in the same sense." See SDCL 53-3-3; Braunger, 405 NW2d at 646. Its existence is determined by considering the parties' words and actions. See 17A AmJur2d Contracts Â§29 (1991).
[Â¶23] When considering the parties' words and actions and viewing the evidence most favorably to Coffee Cup, we find that genuine issues of material fact exist concerning the mutuality of consent. The record reflects that the parties agreed that Donnellys would sell approximately fourteen acres of real property to Coffee Cup. They agreed that the real property to be sold was located within "the extreme South end of the Southeast Quarter of the Northwest Quarter (SEÂ¼NWÂ¼) of Section Eighteen (18), Township Ninety-two (92) North, Range Fifty (50), West of the 5th P.M., Union County, South Dakota." In addition, the parties further agreed that the specific dimensions of the property would be determined by a later survey of the property. See Amdahl v. Lowe, 471 NW2d 770, 775 (SD 1991) (citations omitted) (stating that "[a] general description of the land which is the subject of the contract is sufficient, and parol evidence may be admitted to provide the more particular description").
[Â¶24] As clearly established by the record, and contrary to the trial court's memorandum opinion,(fn3)  Donnelly directed that a survey of the property be completed. Both Coffee Cup and Donnellys obtained copies of the survey map. In addition, Donnelly testified at his deposition that the survey map accurately reflected the land he believed he was selling to Coffee Cup, designated on the plat as "Lot P."(fn4)  The evidence also reveals that Heinz received a copy of the survey in November 1995 and delivered it to Donnellys, requesting a warranty deed for the property by January 15, 1996. Further, he informed them that the survey plat had been delivered to the Union County Abstract and Title Company, in preparation for obtaining title insurance. Therefore, it is clear that, as of November 1995, both parties were aware that "Lot P" was the designated property. Moreover, no evidence exists to establish that any other description was presented to the parties prior to Diane's November 4, 1996 letter claiming Coffee Cup had no enforceable rights under the option contract.(fn5) 
[Â¶25] In addition, we find that a genuine issue of material fact exists regarding Donnellys' knowledge of DOT's loss of interest in a property exchange agreement. Coffee Cup claims Heinz informed Donnellys at the time the second option contract was executed that DOT had lost interest in the property exchange agreement. Further, Coffee Cup claims it informed Donnellys that it would exercise the option to purchase the property regardless of DOT's interest. Donnellys, however, claim that Heinz failed to inform them of DOT's loss of interest in the property exchange until after the second option contract was executed, and that the lack of notice constitutes concealment and misrepresentation by Coffee Cup.
[Â¶26] Therefore, we find that genuine issues of material fact exist regarding mutuality of consent and Donnellys' knowledge of DOT's loss of interest in a property exchange agreement. Accordingly, summary judgment was improperly granted.
[Â¶27] Reversed and remanded.
[Â¶28] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.
Footnotes
1.  Diane is the record owner of the property, but George was authorized to act on her behalf. 
2.  "Lot P" appears to be the configuration of the parcel Donnelly and Heinz discussed after physically viewing the property and speaking with an officer at the ASCS office. Initially, the property's north boundary was to run straight east and west of the north boundary of Lot N. However, this boundary needed to be moved seventy-five feet north, so that the tract contained fourteen acres. 
3.  It should be noted that confusion exists on this issue. In the trial court's memorandum opinion, dated May 7, 1998, the court stated that the plaintiff had the property surveyed. This is contrary to the deposition testimony of both Donnelly and Heinz, which stated that Donnelly ordered the survey after Diane received Coffee Cup's July 15, 1995 letter of acceptance. Coffee Cup referenced surveying in its October 8, 1996 letter in which it stated that it intended to have the surveyors measure the property for platting purposes. We find nothing in the record to establish that Coffee Cup at any time hired a surveyor. 
4.  It should be noted that a portion of Lot "P" is located outside the property described in both option contracts. 
5.  A metes and bounds description, which was inconsistent with the description stated in the contract and survey plat, was included in Coffee Cup's December 13, 1996 letter to Diane. However, the metes and bounds description had not been presented to Diane at any previous time.