**Frances ULRICH, Plaintiff,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant.**

**Civ. No. 88-5114.**

United States District Court,
D. South Dakota, W.D.

Aug. 10, 1989.

Gregory Eiesland, Lynn, Jackson, Shultz & Lebrun, Rapid City, S.D., for plaintiff.

G. Verne Goodsell, Gunderson, Palmer, Goodsell & Nelson, Rapid City, S.D., for defendant.

## MEMORANDUM OPINION AND ORDER

BATTEY, District Judge.

### NATURE AND PROCEDURAL HISTORY

Plaintiff Frances Ulrich alleges bad faith by defendant St. Paul Fire & Marine Insurance Company in its handling of a claim for rehabilitation benefits under South Dakota's worker's compensation laws, South Da-

kota Codified Laws 62–4–5.1. This Court has diversity jurisdiction, 28 U.S.C. § 1332.

Defendant filed a motion for summary judgment in this case on July 3, 1989, pursuant to Fed.R.Civ.P. 56(b) to which plaintiff filed a response on July 17, 1989. While this Court considers that the response opposing defendant's motion is not in complete compliance with Local Rule 4, Section 8(D),[1] nonetheless the Court has considered all facts both contested and uncontested, admitted and unadmitted. This motion comes after an earlier similar motion filed by defendant on November 7, 1988, for which summary judgment was denied with leave to re-urge it at a later date. Defendant further moves to dismiss plaintiff's punitive damages claim and to disqualify plaintiff's expert witness.

### FACTS

Material facts viewed in the light most favorable to plaintiff are as follows:

Plaintiff slipped and injured her back on July 4, 1984, while working as a Licensed Practical Nurse (LPN) for her employer, Community Memorial Hospital. The following day she was seen by Dr. Curtis Liedtke who hospitalized her from July 5 to July 13, 1984. Plaintiff's injury was a prolapsed lumbar disc with lumbrosacral sprain. The defendant as the worker's compensation insurer was promptly notified. Plaintiff returned to part-time work near the end of October 1984, and by November 6 worked up to full time. After working (with lifting restrictions) at her old job until January 29, 1985, her pain reoccurred. Plaintiff returned to Dr. Liedtke on January 25, 1985, and was advised to try to continue working until her reevaluation by another doctor which was scheduled for January 29, 1985, in Denver.

On February 8, 1985, plaintiff was terminated from her employment. On February 14, 1985, Dr. Liedtke informed defendant insurer that plaintiff should not continue to

---

1. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

work for the insured. On March 15, 1985, Dr. Barry Lindenbaum opined that plaintiff had reached maximum medical recovery and gave the patient a nine percent permanent partial disability rating. He also wrote to St. Paul Fire & Marine Insurance Company stating, "I believe that her LPN training could be used to find a job for her other than working in a nursing home." On May 10, 1985, an agreement for permanent partial disability was approved. Payments continued until October 7, 1985, when the final permanent partial disability payment was made. The defendant's state of knowledge in October was to the effect that she was "completely cured and looking for work."[2]

Approximately eight months later, on June 25, 1986,[3] plaintiff's attorney requested rehabilitation benefits. The company's response questioned the applicability of the statute to the facts of the case.[4] The letter constituted a denial of coverage.

On August 1, 1986, Dr. Liedtke reported to defendant that plaintiff was no longer physically able to continue in nursing and that it may be prudent for defendant to reconsider rehabilitation in an area where she would be of little or no risk to herself. On December 19, 1987, James Wattleworth scheduled for the plaintiff an independent medical exam with Dr. Berkebile. Dr. Berkebile examined plaintiff on January 16, 1987, and in his report states, "I think she [plaintiff] could go back to some type of nursing. I don't think she probably should be allowed to do patient transfers or patient lifting." He also stated that plaintiff may be able to handle the secretary work for which she is being retrained, and that it would certainly cause less back strain. The defendant was consulting with attorney Dennis Hill concerning its obligation to resolve the issue of plaintiff's rehabilitation and pursuant to the advice received took steps to do a vocational survey as to the various employment opportunities existing.

On July 1, 1987, the lawyer for plaintiff, Steve Christensen, filed a petition for hearing before the Department of Labor in part claiming plaintiff's entitlement to rehabilitation benefits. On July 5, 1988, the Department of Labor, Division of Labor & Management, found for the insurer on the issues of permanent total disability and temporary total disability, but found for claimant plaintiff as to rehabilitation benefits.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for

---

2. On October 30, 1985, Alva Stone, director of the insured Community Memorial Hospital, wrote to James Wattleworth, the claims adjuster for St. Paul, indicating that plaintiff Ulrich had called her and told her that she was completely cured, pain-free, and without restrictions. The letter also stated that plaintiff had indicated to Alva Stone that she was off worker's compensation and looking for work.

3. Dear Mr. Wattleworth:
   We have corresponded previously on this file. To date Frances has been unable to find any type of employment. Vocational Rehabilitation is now offering to send her to school.
   The purpose of this letter is to request compensation during the period of rehabilitation as provided by SDCL 62–4–5.1. I'd be more than happy to discuss this with you in greater detail.
   Very truly yours,
   DRISCOLL, MATTSON, RACHETTO & CHRISTENSEN
   Steven M. Christensen

4. Dear Mr. Christensen:
   With reference to your June 25, 1986, letter concerning the above-captioned file, a review of SDCL 62–4–5.1 reveals that it is intended for people who are unable to return to their usual and customary line of employment. I have discussed this with Dennis Hill, our Workman's Compensation attorney, and we do not feel that this would apply to this claimant as medically she is able to return to her usual and customary employment. My understanding is that she simply cannot find a job. We will not be able to voluntarily pay compensation during a period of rehabilitation under these circumstances. I am sorry I cannot be of service to you or your client.
   Very truly yours,
   J.M. Wattleworth

summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* 106 S.Ct. at 2553. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Jordan v. Hanks*, 683 F.Supp. 1298, 1299 (W.D.Mo.1988). The Court does find that summary judgment in favor of defendant is in order.

## DISCUSSION

The law of South Dakota recognizes a tort action for bad faith based upon the insured's bad faith failure to pay benefits to which the employee is entitled under the worker's compensation law. Such a cause is separate from the exclusive remedy provisions of the Worker's Compensation Act. The theory supporting the cause of action is that an insurer's violation of its duty of good faith and fair dealing constitutes a tort, even though it is also a breach of contract. The bad faith action proscribes

intentional conduct as distinguished from conduct which partakes of mere negligence. *Hollman v. Liberty Mutual Ins. Co.*, 712 F.2d 1259 (8th Cir.1983); *Champion v. U.S. Fidelity & Guaranty Co.*, 399 N.W.2d 320 (S.D.1987).

The standard for measuring the conduct of an insurer is: (1) an absence of a reasonable basis to deny benefit payments; and (2) knowledge or reckless disregard of the absence of a reasonable basis to deny benefit payments. *Id.*

An insurance company may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied a claim without a reasonable basis.[5] In *Simkins v. Great West Casualty Co.*, 831 F.2d 792 (8th Cir.1987), the court restated the two-prong test from *Champion,* holding that an insurance company is liable only when it intentionally denies a claim without a reasonable basis. In that case, the fact that negotiation was taking place negated any bad faith by the insured. In *Mitzel v. Employers Ins. of Wausau Mut. Co.*, 878 F.2d 233 (8th Cir. 1989), the court restated the two-prong test set out in *Champion* and used that test to dismiss the case when two different medical evaluations gave rise to a legitimate dispute over the benefits to be awarded. This in turn served as a reasonable basis to deny payments for benefits and expenses.

█ In this case, the defendant insurer had legitimate reason to dispute the claim and any qualitative or quantitative failure in the investigation was, at worst, negligence. When rehabilitation benefits were first requested by plaintiff on June 25, 1986, defendant had paid permanent partial disability benefits and possessed evidence which would give rise to a legitimate dispute as to whether rehabilitation benefits were warranted. At the time of the denial of benefits by the insurance company, the company had in its files the statements of Dr. Lindenbaum and a letter from the director of the insured nursing home, Alva Stone, both of which create a reasonable basis for denial of policy benefits. It was

5. In *Champion,* the South Dakota Supreme Court adopted the test for bad faith set forth

originally in *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978).

therefore reasonable for the defendant to issue its July 17, 1986, denial.

Later negotiations and investigations of the claim provided further evidence that there was a reasonable basis to deny benefits. Denial of benefits while investigating the job market and obtaining an independent medical examination is not evidence of bad faith as determined by the two-part test in *Champion*. This investigation, if anything, is evidence of the good faith negotiations which were occurring between the parties. If at any time during the negotiations plaintiff did not like the way the insurance company was handling the negotiations, she could have filed her formal claim with the Department of Labor. She did so only after the lapse of another year (July 1, 1987). Had plaintiff felt that the defendant was acting in bad faith by its denial of July 17, 1986, she could have promptly exercised her statutory right to file her claim with the Department of Labor. The only explanation for her delay is that she was continually satisfied with the progress of the resolution of her claim. While not necessary to the resolution of this case, the Court concludes that either she was satisfied with the progress of the claim or she was deliberately attempting to build a bad faith claim.

The plaintiff's allegations of bad faith proceed out of the denial of her claim for rehabilitation benefits and its conduct during the period of time until the issue of rehabilitation benefits entitlement was resolved. The period involved is from June 25, 1986 (the date of plaintiff's demand) and July 1, 1987 (the date of the filing of the petition for hearing before the Department of Labor). It was not until approximately one year later (July 5, 1988) that the issue was finally resolved.

The South Dakota law relied upon by this plaintiff in her claim of June 25, 1986, was SDCL 62–4–5.1 which provides:

An employee who suffers disablement ... and is unable to return to his usual and customary line of employment shall receive compensation ... during the period he is engaged in a program of rehabilitation, which is reasonably necessary to restore the employee to suitable, substantial, and gainful employment. The employee shall file a claim with his employer requesting such compensation ... [I]f the claim is denied, the employee may petition for a hearing before the Department.

Based upon the history of the case and the facts known to the insured, this Court concludes as a matter of law that there was not an absence of reasonable basis for denial of the benefits demanded. Insofar as the defendant's knowledge was concerned, the plaintiff was "completely cured." While plaintiff disputes the fact that she said she was "completely cured," the defendant was entitled to rely upon the facts communicated to it until it received knowledge to the contrary.

After the initial denial of benefits on July 17, 1986, plaintiff submitted further evidence of entitlement.[6] The defendant proceeded to make an appointment for an independent medical examination, a course of action which it was entitled to take. The matter was still in the posture of an unliquidated claim. The defendant had a right to proceed in a reasonable manner to determine the merits of the claim. Being dilatory or even slow to the

---

6. TO WHOM IT MAY CONCERN:

Frances A. Ulrich has been treated for a back disability, adhesive capsulitis, lumbosacral strain, and for muscle spasms since July 4, 1984.

During the last several months the Patient has made good improvement, especially since returning from Jefferson City, Missouri.

Since January of 1986, Frances has been manipulated under anesthesia for adhesive capsulitis right hip and of both sacroiliac joints with good initial results. However, the Patient's symptomatology has returned each time.

Due to the apparent chronic nature and recurrent symptoms she experiences, I believe that she is no longer physically able to continue in the field of nursing, for which she has been trained. In view of this, it may be prudent to consider rehabilitation in an area she would be of little or no risk to herself.

Thank you for your help in this Lady's case, and if I can be of further assistance please do not hesitate to call on me.

C.J. Liedtke, D.O.

point of "footdragging" doesn't in and of itself amount to bad faith until it reaches the point where it may be said such conduct amounts to an intentional, albeit a reckless, disregard of the absence of a reasonable basis to deny benefits. Mere negligence does not amount to an intentional tort.

Other issues raised by the plaintiff are mooted by this Court's decision of granting summary judgment in favor of defendant.

### ORDER

Based upon the above and foregoing memorandum opinion and for good cause, it is

ORDERED that defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed with prejudice. Defendant shall be awarded costs to be assessed by the Clerk.

IT IS FURTHER ORDERED that the clerk shall issue the appropriate judgment.