1999 SD 31

**Sandra ZUKE, Plaintiff and Appellant,**

v.

**PRESENTATION SISTERS, INC., d/b//a McKennah Hospital, and GAB Robins North America, Inc., Defendants and Appellees.**

**No. 20455.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 20, 1998.

Decided March 10, 1999.

Michael J. Simpson of Groves, Julius & Simpson, L.L.P., Rapid City, for plaintiff and appellant.

Comet Haraldson of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendant and appellee GAB Robins North America, Inc.

Michael S. McKnight and Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield, L.L.P., Sioux Falls, for defendant and appellee Presentation Sisters, Inc.

ANDERSON, Circuit Judge

[¶ 1.] Sandra Zuke (Zuke) appeals the trial court's grant of summary judgment to Presentation Sisters, Inc. (Presentation Sisters), and GAB Robins North America, Inc (GAB). We affirm.

### Facts

[¶ 2.] Prior to the events giving rise to this cause of action, Zuke had been employed as a behavioral health technician at McKennan Hospital in Sioux Falls, South Dakota, since July 1983. Zuke's duties as a behavioral health technician included performing group and individual therapies for families and children. Presentation Sisters owns and operates McKennan Hospital. GAB is the administrator of the worker's compensation program at McKennan Hospital and works with Presentation Sisters in evaluating and adjusting worker's compensation claims.

[¶ 3.] On June 2, 1993, Zuke was injured while working at McKennan Hospital when a thirteen-year-old autistic patient struck her in the face with his fist as she was walking him to his room. Zuke's nose began bleeding and she went to McKennan's emergency room where she was observed by an emergency room physician. The physician took x-rays of Zuke's nose and informed her that it was broken. The emergency room visit was paid for by McKennan Hospital as a worker's compensation injury.

[¶ 4.] Upon arriving home on the day of the injury, Zuke contacted her family physician, Dr. Patricia Peters, to inform her that she was experiencing facial pain and could not breathe through her nose. Dr. Peters referred Zuke to Dr. David Witzke, a plastic surgeon in Sioux Falls. On June 4, 1993,

Zuke visited Dr. Witzke. Dr. Witzke indicated in his notes that Zuke's nose was crooked and that he believed evidence of an old fracture was present. The June visits to Dr. Witzke and Dr. Peters were both covered by McKennan's worker's compensation plan.

[¶ 5.] In September 1993, Zuke went back to Dr. Witzke for an evaluation. Dr. Witzke noted that Zuke had a deviated septum [1] which would require rebreaking the nose and surgery in the form of an open reduction of the nasal structure to correct. Dr. Witzke also discussed the possibility of performing cosmetic surgery for Zuke at the same time the open reduction surgery would be performed.

[¶ 6.] Dr. Witzke's notes regarding the surgeries were forwarded to Nancy Williams (Williams), claims examiner for GAB. Based on Dr. Witzke's original notes in which he stated that he believed Zuke had a prior nose fracture, Williams wrote to Zuke in November 1993, requesting her to sign a release for medical reports and requesting the name of the doctor who treated the alleged old nasal fracture. When Zuke had not yet signed and returned the release to Williams, Williams again made the same request to Zuke in January 1994. Sometime shortly after receiving the second letter, Zuke called William's office and denied having any prior nasal fractures.

[¶ 7.] On February 28, 1994, Williams wrote to Zuke advising her that a second opinion was required before pre-approval for the surgery would be granted. Williams arranged for Zuke to meet with Dr. Rif'at Hussain of Sioux Falls. After examining

Zuke, Dr. Hussain wrote to Williams. Dr. Hussain's letter noted that Zuke's medical record included somewhat contradictory statements from Drs. Peters and Witzke. Dr. Hussain felt that the hump and a scar from a laceration on Zuke's nose were the result of the work-place injury, but doubted that the septal deviation was caused by the injury. Dr. Hussain also noted that certain other recommended surgery was cosmetic only.

[¶ 8.] On May 4, 1994, Williams wrote to Zuke informing her that approval for the surgery was being denied as there was "no medical documentation stating that this [surgery] is absolutely necessary nor ... is a result of the injury of June 2, 1993." In the letter Williams advised Zuke that she had the right pursuant to SDCL 62–7–12 [2] to appeal the decision of denial to the department of labor within two years. Zuke did not appeal the decision of denial.

[¶ 9.] Over the next year Zuke experienced breathing difficulties. On June 4, 1995, she went to the emergency room at McKennan Hospital, where she was diagnosed with a history of intermittent dyspnea. [3]

[¶ 10.] Williams wrote to Chris Specht (Specht), Director of Risk Management for Presentation Sisters, on August 15, 1995, and enclosed the medical notes of the June 4–5 emergency room visit. Williams stated in her letter that there were no notes stating that the problems were related to the nose injury. Williams opined coverage could be denied based on the emergency room visit not being causally and directly related to the original injury. Specht responded via an

---

1. A deviated septum is "a condition in which the nasal septum (the partition-like structure which separates the interior of the nose into two compartments, a right and a left) is bent toward one side or the other. The side of the nose into which the septum protrudes is partially obstructed; in severe cases, breathing through the obstructed side is difficult or impossible. A small amount of deviation is normal." J.E. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* (1988).

2. SDCL 62–7–12 provides:
   If the employer and injured employee or his representative or dependents fail to reach an

agreement in regard to compensation under this title, either party may notify the department of labor and request a hearing according to rules promulgated pursuant to chapter 1–26 by the secretary of labor. The department shall fix a time and place for the hearing and shall notify the parties.

3. Dyspnea is defined as "shortness of breath; labored breathing." J.E. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* (1988).

August 18, 1995 letter, stating coverage for the emergency room visit should be denied for not being causally related to the broken nose. Williams thereafter sent Zuke a denial letter on August 28, 1995, stating that in her opinion the medical bills were not causally related to the June 2, 1993 nose injury. This letter again informed Zuke she had a right to appeal the decision to the department of labor.

[¶ 11.] Dr. Peters sent letters to Williams on September 20, 1995, and April 10, 1996, informing her that Zuke was still having problems breathing. Dr. Peters stated it was her opinion that the symptoms would probably be improved by straightening the nasal septum, and the breathing problems had probably arisen since her injury to the nose.

[¶ 12.] On May 6, 1996, Zuke wrote to Williams requesting coverage for a scheduled surgery to repair the nose. On May 13, 1996, Williams wrote to Dr. Peters stating that the claim would be denied because the statute of limitations had expired as more than two years had passed since the May 4, 1994 denial of surgical intervention.

[¶ 13.] Zuke proceeded to have the surgery performed and on March 27, 1997, filed a complaint alleging bad faith and deceit on the part of GAB and Presentation Sisters in connection with the denial of medical benefits. The circuit court granted GAB's and Presentation Sisters' motion for summary judgment on the basis that there was no genuine issue of material fact and that the case lacked the factual foundation which would support a conclusion that GAB and Presentation Sisters acted with intentional bad faith. The court held that the case did not meet the criteria for a claim based on deceit as there were no facts presented by Zuke indicating that GAB and Presentation Sisters misled her in any way. Zuke appeals the award of summary judgment raising the following issues:

1. Whether Zuke must exhaust her administrative remedies with the department of labor prior to bringing her bad faith and deceit action?

2. Do genuine issues of material fact exist regarding whether GAB and Presentation Sisters had a reasonable basis for denying medical expenses?

3. Do genuine issues of material fact exist as to whether GAB and Presentation Sisters committed statutory deceit?

## Standard of Review

[¶ 14.] The standard under which we review summary judgment is well established:

"Summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the nonmoving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. On the other hand, '[t]he party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment.' "

*Greene v. Morgan, Theeler, Cogley & Petersen,* 1998 SD 16, ¶ 6, 575 N.W.2d 457, 459 (citations omitted). If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper. *Mack v. Kranz Farms, Inc.,* 1996 SD 63, ¶ 8, 548 N.W.2d 812, 814.

## Analysis and Decision

### Exhaustion of Administrative Remedies

[¶ 15.] In awarding summary judgment to GAB and Presentation Sisters, the trial court stated Zuke's case was governed by South Dakota's worker's compensation statutes. SDCL 62-3-2 provides:

The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, on account of such injury or death against his employer or any employee, partner, officer, or director of such employer, except rights and remedies arising from intentional tort.

[¶ 16.] Under SDCL 62–7–12, if the employer and injured employee fail to reach an agreement with regard to worker's compensation, either party may notify the department of labor and request a hearing. If a worker's compensation claim is denied, the aggrieved party has two years to file a written request pursuant to SDCL 62–7–35.[4] Williams notified Zuke of her right to appeal the denial of coverage when she sent Zuke the letters denying compensation for the surgery and 1995 emergency room visit. GAB and Presentation Sisters assert that Zuke's failure to request a hearing with the department of labor pursuant to SDCL 62–7–12 precludes her from bringing a claim under the intentional torts of bad faith and deceit because she failed to exhaust her administrative appeals under the worker's compensation statutes.

[¶ 17.] Exhaustion of administrative remedies is a fundamental principle of administrative law and jurisprudence that precludes a state court from exerting jurisdiction over a claim that has not yet reached the final stages of the administrative process. The doctrine is a well-settled component of the Administrative Procedures Act.[5] *Jansen v. Lemmon Fed. Credit Union*, 1997 SD 44,

¶ 7, 562 N.W.2d 122, 124. "It is a settled rule of judicial administration that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Id.* (quoting *South Dakota Bd. of Regents v. Heege*, 428 N.W.2d 535, 539 (S.D.1988)).

[¶ 18.] Exhaustion of administrative remedies applies to disputes cognizable by an administrative agency. *Johnson v. Kolman*, 412 N.W.2d 109, 112 (S.D.1987). This Court has recognized in the employment law arena that torts such as assault and battery and intentional infliction of emotional distress are separate and distinct actions from allegations of providing a hostile work environment, and may be brought against an employer in circuit court without first bringing the action in the division of human rights. *See Wiest v. Montana*, 1998 SD 63, 580 N.W.2d 613. We are now presented with the issue of whether a claimant with a worker's compensation claim shall be required to first exhaust her administrative remedies before the department of labor before that claimant will be allowed to bring a bad faith claim for denial of worker's compensation benefits in circuit court.

[¶ 19.] GAB and Presentation Sisters urge this Court to adopt the rule followed by the federal district courts in Mississippi in disposing of bad faith worker's compensation cases prior to administrative remedies being exhausted. "Ordinarily, the matter of entitlement is first resolved. Then, should plaintiff prevail on this issue, a plaintiff next pursues the bad faith action." *Richards v. Amerisure Ins. Co.*, 935 F.Supp. 863, 869 (S.D.Miss.1996) (citing *Dial v. Hartford Acc. & Indemn. Co.*, 863 F.2d 15, 16 (5thCir.1989)). In interpreting Mississippi

---

4. SDCL 62–7–35 provides:
   The right to compensation under this title shall be forever barred unless a written request for hearing pursuant to § 62–7–12 is filed by the claimant with the department within two years after the self-insurer or insurer notifies the claimant and the department, in writing, that it intends to deny coverage in whole or in part under this title. If the denial is in part, the bar shall only apply to such part.

5. The South Dakota Administrative Procedures Act (SDCL ch 1–26) has codified the exhaustion of administrative remedies doctrine in SDCL 1–26–30, which states in part: "A person who has exhausted all administrative remedies available within any agency or a party who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter."

law and procedure, the federal district court in Mississippi has recognized that the worker's compensation commission has exclusive jurisdiction to determine entitlement to worker's compensation benefits, and because Mississippi courts require entitlement to benefits before one can obtain punitive damages, actions in bad faith cannot proceed until administrative remedies are exhausted. *Butler v. Nationwide Mut. Ins. Co.*, 712 F.Supp. 528, 529 (S.D.Miss.1989). *See also Kitchens v. Liberty Mut. Ins. Co.*, 659 F.Supp. 467 (S.D.Miss.1987); *Powers v. Travelers Ins. Co.*, 664 F.Supp. 252 (S.D.Miss.1987). Further, a federal court in Mississippi has noted that if the court decides the bad faith claim before the worker's compensation proceedings are completed, the court would be presuming the plaintiff is entitled to benefits, which could lead to inconsistent results with the eventual findings in the worker's compensation matters. *Billingsley v. United Technologies Motor Systems*, 895 F.Supp. 119, 121 (S.D.Miss.1995) (case dismissed without prejudice pending resolution of administrative and judicial worker's compensation procedures).

[¶ 20.] GAB and Presentation Sisters claim that Zuke should have appealed her decision to the department of labor so that it could have determined whether she was entitled to benefits. The rationale behind this argument is that Zuke could not prevail on a bad faith claim if she is not entitled to benefits, since a finding by the department of labor that benefits are not warranted establishes that there was a reasonable basis for denial.

[¶ 21.] The federal district court in South Dakota has held that a bad faith action could not proceed once the department of labor determined that the plaintiff was not entitled to benefits. *Jordan v. Union Ins. Co.*, 771 F.Supp. 1031 (D.S.D.1991). In *Jordan,* the plaintiff simultaneously filed an appeal to the department of labor for denial of worker's compensation benefits and a bad faith action in federal court for the denial. The department of labor found the plaintiff was not entitled to benefits and the insurer thereafter moved for summary judgment on the bad faith action. In awarding summary judg-

ment to the insurer and refusing to grant plaintiff's request for a stay, the court held as a matter of law that the insurer's denial of the plaintiff's claim for benefits could not have been made in the absence of a reasonable basis once the department of labor found that the plaintiff was not entitled to worker's compensation benefits. *Id.* at 1033.

[¶ 22.] This Court is convinced that Zuke should have presented her claim to the department of labor before proceeding to court with a bad faith cause of action. Before a trial court may grant relief for a bad faith denial of worker's compensation benefits, it must decide whether the plaintiff is entitled to benefits. This threshold issue must be decided within the worker's compensation forum. Such a requirement furthers the goal behind the worker's compensation laws in having a claimant's entitlement to benefits properly determined by the agency which has the most experience and expertise in dealing with these type of issues. Requiring a claimant to proceed to the department of labor promotes efficiency, keeps the administrative and judicial functions separate, and discourages plaintiffs from waiting until the statute of limitations has run on their administrative claims and bringing tort claims in an attempt to get a more generous award. Therefore, only after a worker's compensation claimant has exhausted her remedies under the South Dakota Worker's Compensation statutes may a trial court hear her bad faith claim for denial or worker's compensation benefits.

[¶ 23.] We need not address the remaining issues presented by Zuke as we find she was required to exhaust her administrative remedies with the department of labor before proceeding with this cause of action in state court. The decision of the trial court granting summary judgment is affirmed.

[¶ 24.] MILLER, Chief Justice, AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 25.] ANDERSON, Lee D., Circuit Judge, for SABERS, Justice, disqualified.