2000 SD 66

**Ralph READ, M.D., Plaintiff and Appellee,**

v.

**McKENNAN HOSPITAL, Defendant and Appellant.**

No. 20968.

Supreme Court of South Dakota.

Argued Jan. 13, 2000.

Decided May 17, 2000.

---

Steven W. Sanford and Michael A. Henderson of Cadwell, Sanford, Deibert & Garry, Sioux Falls, South Dakota, Attorneys for plaintiff and appellee.

James E. McMahon and Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

FITZGERALD, Circuit Court Judge.

[¶ 1.] Ralph Read (Read), a board certified radiologist, commenced this action against McKennan Hospital (McKennan) alleging breach of contract. The trial court granted Read's motion for partial summary judgment as to liability for breach of contract. McKennan then filed this intermediate appeal. We affirm and remand to the trial court.

## FACTS

[¶ 2.] Read, a board-certified radiologist, was employed by Medical X–Ray Center (MXC) from 1975 to 1988. During that time, Read maintained staff and radiology privileges at McKennan, a non-profit hospital located in Sioux Falls, South Dakota.

[¶ 3.] McKennan Medical Staff Bylaws (Bylaws) governed the relationship between McKennan and its staff. Bylaws provided that radiology privileges had to be renewed and reapproved every two years. The Board renewed Read's privileges without exception until 1990.

[¶ 4.] In 1988 Read resigned from his position with MXC. However, his contract with MXC contained a two-year non-compete clause. Consequently, he worked for MXC until 1990, providing radiology services as an independent contractor.

[¶ 5.] In 1990 Read ended his relationship with MXC. He intended to go into private practice starting June 1, 1990. Around that time, Read applied for a renewal of his radiology privileges at McKennan. On July 27, 1990, Read received a letter from McKennan telling him that it had renewed his radiology privileges for another two years.

[¶ 6.] On August 1, 1990, Read wrote to McKennan stating that he was no longer associated with MXC. Fred Slunecka (Slunecka), McKennan's Chief Executive Officer, wrote Read a letter telling him that his radiology privileges would not be renewed. As a reason for non-renewal, Slunecka explained that McKennan had an exclusive contract for radiology services with MXC.

[¶ 7.] On August 27, 1990, McKennan's Board of Directors (Board), by unanimous vote, passed a resolution to deal exclusively with MXC. Board then voted to deny Read's privileges to practice radiology at McKennan. Read filed a breach of contract action against McKennan; the trial court granted his motion for partial summary judgment on the issue of liability. McKennan sought intermediate appeal from this Court raising the following issues:

Whether Read's action is barred because he failed to exhaust his administrative remedies.

Whether McKennan is entitled to immunity under the Health Care Quality Improvement Act.

Whether the trial court erred in finding that McKennan breached Read's contract as a matter of law.

## STANDARD OF REVIEW

[¶ 8.] Our review of a trial court's order granting summary judgment is well established.

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Coffee Cup Fuel Stops & Convenience Stores, Inc., v. Donnelly*, 1999 SD 46, ¶ 17, 592 N.W.2d 924, 926 (quoting *Walther v. KPKA Meadowlands Ltd. Partnership*, 1998 SD 78, ¶ 14, 581 N.W.2d 527, 531).

## ANALYSIS AND DECISION

[¶ 9.] **Whether Read's action is barred because he failed to exhaust his administrative remedies.**

[¶ 10.] McKennan asserts that Read's failure to administratively appeal the denial of his radiology privileges de-

prives this court of jurisdiction. We disagree.

[¶ 11.] The exhaustion of remedies doctrine is well settled in the State of South Dakota. *Zuke v. Presentation Sisters, Inc.,* 1999 SD 31, ¶ 17, 589 N.W.2d 925, 929. In short it is the "withholding of judicial relief on a claim or dispute cognizable by an administrative body until the administrative process has run its course." *Gottschalk v. Hegg,* 89 S.D. 89, 92, 228 N.W.2d 640, 642 (1975).

[¶ 12.] This Court has stated that the purpose behind the exhaustion of remedies doctrine is to "permit[ ] the administrative agency to exercise its discretion, apply its expertise, and make a factual record upon which to base subsequent judicial review." *Weatherwax v. Hiland Potato Chip Co. of Sioux Falls,* 372 N.W.2d 118, 120 (S.D. 1985), *overruled on other grounds by Johnson v. Kolman,* 412 N.W.2d 109, 113 (S.D.1987).

[¶ 13.] However, we have also held that "[e]xhaustion is not required where the board having appropriate jurisdiction has improperly made a decision prior to a hearing or is so biased that a fair and impartial hearing cannot be had." *South Dakota Board of Regents v. Heege,* 428 N.W.2d 535, 539 (1988) (citing *Mordhorst v. Egert,* 88 S.D. 527, 223 N.W.2d 501 (1974))

[¶ 14.] In South Dakota, a hospital's bylaws constitute a binding contract between the hospital and the hospital staff members. *See St. John's Hospital Medical Staff v. St. John Regional Medical Center, Inc.,* 90 S.D. 674, 679, 245 N.W.2d 472, 474 (1976). Article III of the Bylaws addresses the topics associated with becoming a member of McKennan's medical staff. Section 3.4 of Article III is entitled: "Appointment and Reappointment." It provides, in part, that "[a]ny final decisions respecting appointments or privileges ... are the sole responsibility of the Board." Thus, the Bylaws make it clear that the Board was to be the final arbiter in dis-

putes between McKennan and its staff members.

[¶ 15.] At the August 27, 1990 board meeting, the Board unanimously passed a resolution to deal exclusively with MXC. It then voted against renewing Read's radiology privileges. This decision was communicated to Read by letter dated December 17, 1990 where Slunecka wrote that Read's "voluntary disassociation with MXC ... effectively precluded [him] from ... providing radiology services at McKennan."

[¶ 16.] It is clear to this Court that McKennan made its final decision regarding the nonrenewal of Read's privileges at the August 27, 1990 board meeting. It was not going to allow Read to practice radiology at McKennan absent some association with MXC. In light of these circumstances, to require Read to exhaust his administrative remedies would have been an exercise in futility.

[¶ 17.] **Whether McKennan is entitled to immunity under the Health Care Quality Improvement Act.**

[¶ 18.] McKennan asserts it is entitled to immunity under the Health Care Quality Improvement Act (Act), 42 U.S.C. §§ 11101, *et seq.* However, in order for immunity to apply, any such action must fall within the meaning of Act's definition of a "professional review action." 42 U.S.C. § 11151(9). This definition provides in pertinent part:

> The term 'professional review action' means an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based upon the competence or professional conduct of an individual physician ... and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action.

*Id.* 42 U.S.C. § 11151(9) further provides that:

[A]n action is not considered to be based on the competence or professional conduct of a physician if the action is primarily based on ... (E) any other matter that does not relate to the competence or professional conduct of a physician.

*Id.*

[¶ 19.] McKennan's decision to disallow Read's radiology privileges was not based upon his performance or his competence. Neither McKennan nor any member of its medical staff ever contended that Read's privileges were being revoked due to any wrongdoing, malfeasance, nonfeasance, or any lack of qualification. Instead, McKennan repeatedly told Read that he was not going to be able to exercise radiology privileges solely because of an alleged exclusive contract with MXC. McKennan's decision not to renew Read's privileges was based upon its own erroneous interpretation of its contractual arrangement with MXC rather than upon Read's competence or professional conduct, thus placing it outside of the immunities granted by the Act.

[¶ 20.] **Whether the trial court erred in finding that McKennan breached Read's contract as a matter of law.**

[¶ 21.] McKennan alleges the trial court erred in finding that it breached Read's contract as a matter of law. McKennan argues it had entered into an implied contract extension with MXC which precluded it from granting radiology privileges to anyone but MXC. We disagree.

[¶ 22.] "The construction of a contract is a question of law that we review de novo." *Chord v. Reynolds,* 1999 SD 1, ¶ 11, 587 N.W.2d 729, 731 (citing *Ward v. Midcom, Inc.,* 1998 SD 10, ¶ 9, 575 N.W.2d 233, 236). Accordingly, the issues are fully reviewable and we afford no deference to the conclusions reached by the trial court.

[¶ 23.] It is well settled that "in determining the proper interpretation of a contract the court must seek to ascertain and give effect to the intention of the parties." *Malcolm v. Malcolm,* 365 N.W.2d 863, 865 (S.D.1985) (citing *Chord v. Pacer Corp.,* 326 N.W.2d 224 (S.D.1982); *Johnson v. Johnson,* 291 N.W.2d 776 (S.D. 1980)). "An enforceable contract requires [mutual assent]." SDCL 53–1–2(2); *Braunger v. Snow,* 405 N.W.2d 643, 646 (S.D.1987). "There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract." 17A Am.Jur.2d *Contracts* § 26 at 54 (1991); *See Miller v. Tjexhus,* 20 S.D. 12, 16, 104 N.W. 519, 520 (1905).

[¶ 24.] It is undisputed that there was no formal contract extension in place between McKennan and MXC after the contract expired in 1989. However, McKennan contends that based on this Court's holding in *Jurrens v. Lorenz Mfg. Co. of Benson, Minn.,* 1998 SD 49, 578 N.W.2d 151, a jury could determine that the previous contract continued on despite the fact that no contract extension was executed. This contention misconstrues *Jurrens.*

[¶ 25.] Of great importance in the *Jurrens* case was the existence of mutual assent. Mutual assent refers to a meeting of the minds on a specific subject. Mutual assent to a contract does not exist "unless the parties all agree upon the same thing in the same sense." SDCL 53–3–3; *Braunger,* 405 N.W.2d at 646. Its existence is determined by considering the parties' words and actions. *See* 17A Am. Jur.2d *Contracts* § 29.

[¶ 26.] Mutual assent was notably absent in this case. MXC's December 30, 1990 letter to McKennan clearly indicated that it did not want to enter into an exclusive contract with McKennan. McKennan's position in regard to its relationship with MXC reflects nothing more than the fact that it made a unilateral decision to deal with MXC exclusively. *See Read v. Medical X–Ray Center,* 110 F.3d 543, 546 (8th Cir.1997). A unilateral intent is not enough to make a contract binding. *Langer v. Stegerwald Lumber Co.,* 262 Wis.

383, 55 N.W.2d 389, 392 (1952). Absent the requisite mutual assent between McKennan and MXC, the *Jurrens* case is inapplicable. *See Jurrens*, 1998 SD 49, ¶ 6, 578 N.W.2d at 153 (An implication of mutual assent cannot overcome direct evidence that no mutual assent existed.)

[¶ 27.] We find that there was no exclusive contract between McKennan and MXC. Further, the Board's decision denying Read's request for radiology privileges was not based on any provision set forth in Article III of the Bylaws, and therefore McKennan was in breach of contract. It is unnecessary for this Court to address the issues pertaining to the language of the 1987 contract.

## CONCLUSION

[¶ 28.] Based on the foregoing, we affirm and remand this action to the trial court for a determination of damages.

[¶ 29.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 30.] FITZGERALD, Circuit Judge, for SABERS, Justice, disqualified.