#23903-a-JKK

**2007 SD 40**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

WYNNETTE HEIN,                          Plaintiff and Appellant,

    v.

ACUITY,                          Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOHN J. DELANEY
Judge

\* \* \* \*

JAMES D. LEACH                          Attorney for plaintiff
Rapid City, South Dakota                and appellant.

SUSAN BRUNICK SIMONS
KRISTI GEISLER HOLM of
Davenport, Evans, Hurwitz &
 Smith, LLP                              Attorneys for defendant
Sioux Falls, South Dakota               and appellee.

\* \* \* \*

ARGUED ON AUGUST 29, 2006

OPINION FILED **04/18/07**

KONENKAMP, Justice

[¶1.] In a workers' compensation case, can a claimant maintain a separate action for bad faith solely on the basis of unreasonable conduct by the employer's insurer, absent proof of any wrongful denial of benefits? After receiving benefits for a job-related injury, the claimant sought rehabilitation benefits and the insurer denied her request. The claimant petitioned *pro se* for benefits with the Department of Labor and the insurer counterclaimed seeking reimbursement of all benefits previously paid. When the claimant hired an attorney, the insurer withdrew its counterclaim. While her rehabilitation claim was still pending, the claimant brought a separate bad faith action against the insurer for its conduct in submitting an unfounded counterclaim. The circuit court dismissed the complaint on the ground that it failed to state a claim upon which relief can be granted. We affirm because in the context of workers' compensation claims, where no contractual relationship exists between the workers' compensation claimant and the insurer, a bad faith action must include a wrongful denial of benefits, not merely wrongful conduct.

## Background

[¶2.] Wynnette Hein injured her back on October 7, 2002, while working for her employer, Stanley Johnson Construction. As a result of her injuries, she underwent back surgery. Acuity, as the employer's workers' compensation insurer, paid Hein medical and disability benefits. Ultimately, however, Hein was unable to return to her job as a construction worker. She then sought rehabilitation benefits for retraining, but Acuity denied her request.

-1-

[¶3.]       In June 2004, Hein filed a *pro se* petition with the Department of Labor, wherein she asked for rehabilitation benefits. Acuity answered by averring that she failed to state a claim for which relief can be granted, failed to give timely notice of her injury, and all her previous benefits were mistakenly paid in good faith. Acuity counterclaimed, therefore, demanding that she reimburse "medical and indemnity benefits paid" in error. After she hired an attorney, Hein responded to the counterclaim, contending that it was an attempt "to intimidate [her] from pursuing her legitimate claim for benefits." She further alleged that Acuity did not "in good faith believe that [she] owe[d] them anything" and that the counterclaim was "abusive and should be denied."

[¶4.]       Acuity amended its answer and withdrew its counterclaim. It acknowledged that "although timely written notice was not provided of the October 7, 2002 injury, Employer and Insurer admit that [her] supervisors were aware of the incident." It still denied that Hein had shown an entitlement to rehabilitation benefits.[1]

[¶5.]       With her workers' compensation claim still pending, Hein brought suit in circuit court against Acuity for bad faith.[2] According to Hein, Acuity acted in bad faith when it did not conduct a reasonable investigation, failed to consider evidence it had in its possession, and sought reimbursement for benefits paid when it knew it

---

1.    Whether Hein was entitled to rehabilitation benefits was never part of this appeal.

2.    The circuit court allowed Hein to file an amended complaint. Therefore, we review the amended complaint for the purpose of this appeal.

had no reasonable basis to deny benefits retroactively or to claim that she owed

anything. Hein's complaint further alleged:

> 19. When it made the counterclaim, Acuity knew that the value of Hein's rehabilitation benefits claim was less than $10,000, and knew that with a claim of such value, it was unlikely that Hein would be able to retain an attorney to represent her.
>
> 20. Acuity knew the counterclaim would make it even less likely that Hein would be able to obtain an attorney.
>
> 21. Acuity knew that without an attorney, Hein would be unable to prosecute her claim for rehabilitation benefits effectively, or to defend the counterclaim effectively, and would be more likely to be intimidated into giving up her claim for rehabilitation benefits.
>
> ***
>
> 23. Hein was able to obtain an attorney, James D. Leach, to represent her.
>
> 24. Hein's attorney noticed the depositions of the relevant witnesses with respect to the counterclaim.
>
> 25. Prior to the depositions being taken, Acuity admitted that the counterclaim lacked any basis, and filed an Amended Answer withdrawing it.

Because of this alleged conduct, Hein asserted that Acuity breached its duty of good

faith and fair dealing and caused her emotional distress for which she requested

compensatory damages. She also sought punitive damages "to deter Acuity from

continuing similar misconduct against other injured employees."

[¶6.] Acuity answered and moved to dismiss under SDCL 15-6-12(b)(5) (Rule

12(b)(5)). It contended that because Hein's claim for rehabilitation benefits was still

pending with the Department, the case should be stayed until she exhausted her

administrative remedies. Moreover, Acuity argued that to the extent Hein's bad

faith claim was "based upon statements made in judicial proceedings, such

statements are absolutely privileged and not actionable." Accordingly, Acuity asked that Hein's complaint be dismissed in its entirety and with prejudice.

[¶7.]	At the hearing on Acuity's motion, Hein argued that she was not required to exhaust her administrative remedies because Acuity's bad faith conduct was independent of her claim for rehabilitation benefits. She further alleged that her bad faith claim did not rest solely on Acuity's pleadings in the underlying workers' compensation case. These pleadings, she maintained, were merely evidence of Acuity's bad faith. Acuity, on the other hand, argued that without the privileged pleadings Hein's bad faith claim would fail.

[¶8.]	In its ruling, the circuit court first concluded that Hein's claim was premature because the underlying workers' compensation issue was still pending with the Department. Next, the court examined "whether a cause of action for bad faith can be predicated upon responsive pleadings to a claim." It reasoned that because an absolute pleading privilege is recognized in South Dakota for actions such as defamation, deceit associated with defamation and negligence, and intentional, negligent, and reckless infliction of emotional distress associated with defamation, the privilege should extend to the tort of bad faith. Nonetheless, the court stated that "[e]ven should the pleading privilege not be held to extend that far, these pleadings cannot rise to a level which constitutes bad faith." Thus, the court dismissed Hein's amended complaint with prejudice under Rule 12(b)(5), on the ground that it failed to state a claim for which relief could be granted. Hein appeals.

**Analysis and Decision**

[¶9.]    Customarily, bad faith litigation can be classified as either first- or third-party bad faith. Third-party bad faith is traditionally based on principles of negligence and arises when an insurer wrongfully refuses to settle a case brought against its insured by a third-party. Kunkel v. United Security Ins. Co. of New Jersey, 84 SD 116, 121, 168 NW2d 723, 726 (1968) (negligence and bad faith "are often used interchangeably"); Crabb v. Nat'l Indem. Co., 87 SD 222, 229-30, 205 NW2d 633, 637 (1973). Third-party bad faith exists when an insurer breaches its duty to give equal consideration to the interests of its insured when making a decision to settle a case.

[¶10.]    First-party bad faith, on the other hand, is an intentional tort and typically occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured. Gruenberg v. Aetna Ins. Co., 510 P2d 1032, 1036 (Cal 1973); Champion v. U.S. Fidelity & Guar. Co., 399 NW2d 320, 324 (SD 1987). In these cases, the parties are adversaries, and therefore, an insurer is permitted to challenge claims that are fairly debatable. However, a frivolous or unfounded refusal to comply with a duty under an insurance contract constitutes bad faith. *Champion*, 399 NW2d at 324 (citing Travelers Ins. Co. v. Savio, 706 P2d 1258, 1275 (Colo 1985)); *see also* Isaac v. State Farm Mut. Auto. Ins. Co., 522 NW2d 752, 758 (SD 1994); Julson v. Federated Mut. Ins. Co., 1997 SD 43, ¶6, 562 NW2d 117, 119-20.

[¶11.]    Wrongful conduct toward an employee claimant by the employer's insurer in a workers' compensation case does not fit the traditional definition of

either first- or third-party bad faith.  A bad faith claim related to workers'

compensation is not based on an insurer's refusal to settle its own insured's suit as

in third-party cases, but exists when an insurer breaches its duty to deal in good

faith and fairly when processing a workers' compensation claim.  And, unlike first-

party bad faith, the claimant, not the insured employer, brings the action against

the insurer.  Nonetheless, it is within the first-party bad faith context that multiple

jurisdictions, including South Dakota, recognize a bad faith cause of action based on

an insurer's conduct in a workers' compensation case.  *Champion*, 399 NW2d at 324;

*see also* Reed v. Hartford Accident & Indem. Co., 367 FSupp 134, 135 (EDPa 1973);

Stafford v. Westchester Fire Ins. Co. of New York, Inc., 526 P2d 37, 43-44 (Alaska

1974), *overruled on other grounds*, Cooper v. Argonaut Ins. Co., 556 P2d 525 (Alaska

1976); *Travelers Ins. Co.*, 706 P2d at 1275; Gibson v. Nat'l Ben Franklin Ins. Co.,

387 A2d 220, 222-23 (Me 1978); Southern Farm Bureau Cas. Ins. Co. v. Holland,

469 So2d 55, 58 (Miss 1984); Hayes v. Aetna Fire Underwriters, 609 P2d 257, 261

(Mont 1980); Coleman v. Am. Universal Ins. Co., 273 NW2d 220, 223-24 (Wis 1979).

[¶12.]      Hein structures her claim as though she were in a first-party

relationship with Acuity.  She argues that under South Dakota's first-party bad

faith law, a claim can proceed anytime an insurer's conduct toward a claimant lacks

a reasonable basis or is in reckless disregard of the lack of a reasonable basis.  She

relies on language from *Julson*, where we indicated that an insurer could be liable

for bad faith to its insured not only when there is an absence of a reasonable basis

for *denying policy benefits*, but also when there is an absence of a reasonable basis

for a "failure to comply with a duty under the insurance contract." *See* 1997 SD 43, ¶6, 562 NW2d at 119.

[¶13.]    However, there exists a key difference between bad faith in a workers' compensation action and bad faith in a traditional first-party insured-insurer relationship. In workers' compensation cases, the claimant is not the insured. In true first-party claims, there exists a contractual relationship, whereby the insurer has accepted a premium from its insured to provide coverage. Under those circumstances, we recognized in *Julson* that bad faith can extend to situations beyond mere denial of policy benefits. 1997 SD 43, ¶6, 562 NW2d at 119; Hatch v. State Farm Fire and Cas. Co., 842 P2d 1089, 1097-99 (Wyo 1992) (recognizing a cause of action for "procedural first-party bad faith"); *see also* Spindle v. Travelers Ins. Co., 136 CalRptr 404, 408 (CalCtApp 1977); Harvester Chem. Corp. v. Aetna Cas. & Sur. Co., 649 A2d 1296, 1300-01 (NJSuperCtAppDiv 1994); O'Donnell *ex rel.* Mitro v. Allstate Ins. Co., 734 A2d 901, 906 (PaSuperCt 1999); Union Bankers Ins. Co. v. Shelton, 889 SW2d 278, 283 (Tex 1994).

[¶14.]    Nonetheless, in a dispute between a workers' compensation claimant and the employer's insurer, no contractual relationship exists. While Hein is correct that in South Dakota a workers' compensation bad faith claim derives from the first-party bad faith context, it is nevertheless a distinct cause of action. Bad faith arising out of workers' compensation proceedings does not have the necessary attribute of a traditional first-party bad faith claim, i.e., a contractual relationship.[3]

---

3.    Our workers' compensation laws were adopted to "provide an injured employee a remedy which is both expeditious and independent of proof of
(continued . . .)

Thus, in South Dakota, a workers' compensation claimant can sustain an action for bad faith against an insurer only if the claimant satisfies the two prong test we adopted in *Champion*, 399 NW2d at 324. There must be (1) "an absence of a reasonable basis for denial of policy benefits" and (2) "the [insurance carrier's] knowledge or reckless disregard of a reasonable basis for denial. . . ." *Id.* (citing *Travelers Ins. Co.*, 706 P2d at 1275 (quoting Anderson v. Cont'l Ins. Co., 271 NW2d 368, 377 (Wis 1978))). An insurance carrier is permitted to "challenge claims which are fairly debatable," and therefore, "will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Id.* (citations omitted).

[¶15.]     In *Zuke v. Presentation Sisters, Inc.*, we stated that before a claimant may seek relief for a bad faith claim in circuit court, the Department of Labor must first decide whether benefits were warranted. 1999 SD 31, ¶22, 589 NW2d 925, 930 (administrative remedies must be exhausted, "[b]efore a trial court may grant relief for bad faith *denial* of worker's [sic] compensation benefits" (emphasis added)). It is undisputed that Hein's request for rehabilitation benefits was still pending before the Department when she sought relief for her bad faith claim against Acuity. Nonetheless, Hein contends that *Zuke* does not apply because after Acuity withdrew

---

(. . . continued)

      fault," but we cannot say that because of these laws a first-party relationship is created between the claimant and insurance carrier. *See* Harn v. Continental Lumber Co., 506 NW2d 91, 95 (SD 1993) (citations omitted). Instead, it is the employer who is the insured and has obtained the workers' compensation insurance to be insured against claims brought by injured employees.

its untimely notice defense and counterclaim, there were "no administrative remedies for her to exhaust prior to bringing this lawsuit." Her cause of action, she argues, is not based on a *denial of policy benefits* like the claim in *Zuke,* but on Acuity's bad faith conduct in processing her request for rehabilitation benefits.

[¶16.] Insurers are entitled to challenge fairly debatable claims. *Zuke,* 1999 SD 31, ¶22, 589 NW2d at 930; *Champion,* 399 NW2d at 324; *see also* Ulrich v. St. Paul Fire & Marine Ins. Co., 718 FSupp 759, 763 (DSD 1989). Because any injury in a workers' compensation bad faith claim stems from the insurer's denial, not the insurer's conduct alone, a central element of the cause of action is whether there has been a wrongful denial of benefits.[4] *Champion*, 399 NW2d at 324; *Ulrich*, 718 FSupp at 763-64. Consequently, resolution of a claimant's request for benefits will have a direct bearing on the viability of a bad faith claim. *Zuke*, 1999 SD 31, ¶22, 589 NW2d at 930. Moreover, requiring a claimant to first exhaust administrative remedies "promotes efficiency, keeps the administrative and judicial functions separate, and discourages plaintiffs from waiting until the statute of limitations has run on their administrative claims and bringing tort claims in an attempt to get a more generous award." *Id.*

[¶17.] We conclude that the circuit court was correct when it ruled that Hein's bad faith claim against Acuity was premature because at the time she

---

4. *See* Kirchoff v. Am. Cas. Co. of Reading, Pennsylvania, 997 F2d 401, 405 (8thCir 1993) (holding that a "[d]enial of benefits may be inferred from the insurer's failure to process or pay a claim, and the requisite knowledge (or reckless disregard) on the part of the insurer may be inferred when the insurer has exhibited a 'reckless indifference to facts or to proofs submitted by the insured'").

brought her lawsuit her request for rehabilitation benefits was pending before the Department.[5]

[¶18.]　　　In oral argument, counsel for Hein informed the Court that the parties settled her claim for rehabilitation benefits. Now, Hein has no further administrative remedies to exhaust. Nonetheless, as we previously stated, workers' compensation bad faith will not arise whenever an insurer's conduct toward a claimant is unreasonable. Rather, to establish bad faith, the claimant must show that there has been (1) "an absence of a reasonable basis for *denial of policy benefits*" and (2) "the [insurance carrier's] knowledge or reckless disregard of a reasonable basis for denial. . . ." *Champion*, 399 NW2d at 324 (citations omitted) (emphasis added). A bad faith cause of action based on an insurer's conduct in a workers' compensation case is not traditional first-party bad faith. The relationship between a workers' compensation claimant and an insurer is adversarial and not contractual. An insurer is liable to a claimant *only* when "it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Id.* (citations omitted).[6]

---

5.　　Hein insists that her bad faith claim is not dependent on an ultimate award of benefits. This assertion is mistaken. The unique circumstances surrounding bad faith relating to a workers' compensation claim requires that the claimant first be entitled to the benefits requested. The claimant is not in a contractual relationship with the employer's insurer and, therefore, absent entitlement to benefits, a bad faith claim cannot be sustained.

6.　　By no means do we condone the conduct by counsel for Acuity. Submitting a counterclaim for all previously paid benefits, which counsel withdrew after Hein obtained legal representation, certainly gives rise to an inference that it was not interposed in good faith, and perhaps, as Hein alleges, offered only for the purpose of intimidating her.

[¶19.]     Hein's claim against Acuity is predicated solely on unreasonable *conduct* and does not arise from a bad faith denial of workers' compensation benefits. Thus, her lawsuit does not meet the necessary elements of workers' compensation-bad faith. *See Champion,* 399 NW2d at 324 (citations omitted).

[¶20.]     Affirmed.

[¶21.]     GILBERTSON, Chief Justice and ZINTER, Justice, concur.

[¶22.]     SABERS and MEIERHENRY, Justices, concur in result.


SABERS, Justice (concurring in result).

[¶23.]     While the current state of the law forces me to concur in result, I write specially to suggest a better rule for the future. The majority opinion points out there must be a denial of benefits in order for a claimant to bring a first-party bad faith action against the insurance company. Therefore, Hein cannot bring her bad faith cause of action against Acuity.

[¶24.]     However, I think the better rule is this: Assuming there is bad faith on the part of the insurance company, the claimant should be able to bring a cause of action against the insurance company without a denial of benefits. In *Travelers Ins. Co. v. Savio*, the Colorado Supreme Court found a claimant could bring the bad faith cause of action against the insurance company without waiting for a denial or even if there was no denial of benefits. 706 P2d 1258, 1270 (Colo 1985) (en banc). It noted

> [T]he tort of bad faith depends on the conduct of the insurer regardless of the ultimate resolution of the underlying compensation claim. For example, Savio's request for rehabilitation was finally resolved in May of 1980. That

> resolution, or even a contrary resolution at that time, sheds little light on the question of whether Travelers acted in good faith throughout the preceding year on Savio's request for rehabilitation training.

*Id.* We adopted the test for bad faith used in *Savio* in *Champion v. U.S. Fid. & Guar. Co.,* 399 NW2d 320, 324 (SD 1987). I suggest we should use this language to allow a bad faith cause of action to proceed without a denial of benefits.[7]

[¶25.] The bad faith cause of action is a separate tort, not based on a contractual relationship, therefore the absence of an explicit contractual relationship should not affect when a claim can be brought.[8] It should not be based on wrongful denial, but instead be based on any wrongful conduct in which the insurance company engages. If the tort of bad faith is premised upon the insurance company's duty of good faith and fair dealing, then the ability to bring the tort should not be controlled by the end denial, but rather the insurance company's entire course of conduct. Under the current state of the law, the insurance company can act as badly as it wants and, as long as it does not deny the claim, can suffer no liability for its bad behavior. Justice demands a better rule for the people of South Dakota.

---

7. I realize that in *Zuke v. Presentation Sisters Inc.*, this Court required the underlying claim to be decided by the Department before a bad faith claim could be made. 1999 SD 31, ¶22, 589 NW2d 925, 930. However, I urge this Court to reconsider and find the better rule is to allow the bad faith claim regardless of the underlying disposition of the benefits claim.

8. The majority opinion claims that a claimant can only bring a bad faith cause of action if they meet the two prong test adopted in *Champion* due to the nonexistence of a contractual relationship between insurer and claimant. *Supra* ¶14. *Champion's* test is adopted from *Savio*, and that opinion did not

(continued . . .)

MEIERHENRY, Justice (concurring in result).

[¶26.] The only issue before us is whether the circuit court erred by dismissing the amended complaint for failure to state a claim on which relief may be granted. The Honorable Judge John J. Delaney dismissed the complaint because "bad faith cannot be predicated upon responsive pleadings to a claim." Judge Delaney wrote a memorandum opinion in this case explaining his reasons for dismissal. First, he concluded that the pleadings were privileged and cannot form the basis of a bad faith claim; and second, he concluded even if the pleadings were not immune, bad faith cannot be predicated on withdrawn allegations and counterclaims. The Judge concluded as follows: "Again, Plaintiff may or may not ultimately have a cause of action and, if she does, these pleadings may be admissible as evidence of bad faith. That lies in the future." Whether a bad faith claim can survive without the insurance company's denial of policy benefits was not an issue below. Consequently, Judge Delaney did not address the issue.

[¶27.] Hein claimed that Judge Delaney was wrong in his application of the privilege of pleadings and his ruling that Hein had not exhausted her administrative remedies. Because these were the only issues that Judge Delaney ruled on and the only issues that could have been appealed, we should limit our holding to those issues. In fact, I would only address Judge Delaney's main conclusion that bad faith cannot be predicated on communications made in

_____

(. . . continued)

require the denial of benefits before bringing the bad faith claim. 706 P2d at 1270.

responsive pleadings. We have clearly interpreted the privilege of SDCL 20-11-5(2) as "absolute." Harris v. Riggenbach, 2001 SD 110, ¶7, 633 NW2d 193, 194. The responsive pleadings of which Hein complains falls squarely within the elements set forth in *Janklow v. Keller*, 90 SD 322, 331, 241 NW2d 364, 368 (1976).

[¶28.]     Hein bases her bad faith claim on Acuity's failure to conduct a reasonable investigation and failure to acknowledge facts in its possession of a timely notice. However, the only conduct of which she complains is the act of "asserting a lack of notice, and concoct[ing] a false defense based on that assertion." This conduct, she claimed, constituted bad faith. If this conduct of asserting defenses and counterclaims is privileged, it cannot as a matter of law constitute bad faith. I would affirm on this basis.